W. H. MITCHELL, Appellee, v. THE UNION TERMINAL RAILWAY COMPANY, Appellant.

Railroads:  INJURY TO TEAMSTER: CONTRIBUTORY NEGLIGENCE. The driver of an express wagon, injured by his team which became frightened by a passing train, is not guilty of contributory negligence as a matter of law, by failing to keep a constant outlook for the train; nor in laying down his reins while loading his wagon without taking the precaution to hitch the team; nor in attempting to prevent the escape of the frightened horses.

Instructions.    Where there is no evidence to support an issue made
2    by the pleadings, refusal to instruct in relation thereto is not
error.

Instructions: OPERATION OF TRAIN: NEGLIGENCE.    An instruction
3    that it is the duty of trainmen, when operating a train along
a public street in a city, which is crossed by other streets at
short intervals, to continuously ring the bell, and that an
omission of this duty constitutes negligence, is in conformity
. with Code, section 2072.

Crossings: DUTY TO SOUND BELL.    The requirement of Code,
4    section 2072, that the bell signal of an approaching train shall
be given at all crossings, is not only for the benefit of those
about to cross the track, but those lawfully using teams near
the track.

*Appeal from Woodbury District Court.*—HON. F. R. GAY-
NOR, Judge.

TUESDAY, JANUARY 19, 1904.

ACTION at law to recover damages on account of per-
sonal injury.    There was a verdict and judgment for
plaintiff and defendant appeals.—*Affirmed.*

*Charles A. Dickson* for appellant.

*F. E. Gill* for appellee.

WEAVER, J.—The defendant owns a line of railway
which occupies a part of Leech street, in Sioux City.
Leech street runs east and west, and is crossed at right
angles by Chambers street.    Approaching from the east
in the direction of Chambers street, the track curves to
the south, running near the curb line, and at a point sev-
eral hundred feet west of the Chambers street crossing it
enters an arched doorway into a large packing house.    At
a point about fifty feet west of Chambers street the track
is at a varying distance of eleven to twenty feet from the
curb in front of a building occupied as a poultry house.
About three o'clock p. m. on December 15, 1900, the

plaintiff, a driver in the employ of an express company, brought his team and wagon alongside and near to the curb in front of the poultry house for the purpose of obtaining and carrying away a quantity of empty crates which were piled upon the sidewalk. The work of loading and unloading express and freight wagons at this point was of frequent occurrence, and plaintiff had often performed the same service there. The railway track along this part of Leech street was a branch or spur constructed and used more particularly for the accommodation of the packing house above referred to. At the time of the accident the packing plant had been idle for a long time, but the building or yards seem to have been put to some use for storage purposes, requiring at least some movement of cars. Just prior to the time when plaintiff stopped his team in front of the poultry house, an engine, with several cars, backed down the track from the east to the west, passing under the arch into the packing-house premises. The pile of crates on the sidewalk stood so close to the street that plaintiff was able to reach and load them, in part, without getting off his wagon. Having performed the work so far as practicable in this manner, he got off the wagon, and, having looked to the west and found no train approaching, proceeded to place the remaining crates upon the load. While he was engaged in adjusting the crates at the rear end of the load, the engine and cars came out of the doorway of the packing house, and moved east, towards Chambers street. Their approach was not observed by plaintiff until his team, which was facing west, began to turn around, when he seized one or both of the lines and attempted to hold them. His efforts to check the horses were unavailing, and he was knocked down and run over by the wagon, receiving severe injury. He alleges—and there is evidence to sustain his claim in this respect—that defendant's employes in charge of the engine failed to ring the

bell or give any signal or warning on approaching the street crossing, and that, had reasonable care been exercised to give such signal, he would not have been injured. It is conceded that plaintiff did not tie or fasten his team when he stepped behind the wagon, and, had he looked, he could have seen the train approaching him from the time it emerged from the door of the packing house. It is also conceded that at this time there was in force in Sioux City an ordinance providing that "no person shall leave any animal used as a beast of burden or to which any vehicle or other thing shall be attached on any avenue, street, alley or other place without being securely fastened or guarded so as to prevent its running away." Many of the matters to which we have referred concerning the alleged negligence of the defendant's trainmen, and concerning the acts and conduct of the plaintiff, are the subject of dispute in the record, but the testimony is such that a finding by the jury in accordance with this statement could not be said to be without substantial support. The jury having found for plaintiff in the sum of $700, we are asked, upon several grounds, to reverse the judgment entered upon said verdict.

I. It is said that the trial court erred in refusing to direct a verdict on defendant's motion because (1) of plaintiff's failure to look and listen for the approaching train; (2) of plaintiff's negligence in leaving his team unhitched, and his violation of the ordinance forbidding such acts; and (3) of his negligence in rushing into the street and attempting to seize the horses after they took fright, thereby voluntarily putting himself in a place of danger.

1. INJURY to teamster: contributroy negligence.

We are not prepared to hold, as a matter of law, that plaintiff was guilty of contributory negligence in either respect mentioned. He had the right to be in the street with his team, and to stop at the curb as he did for the purpose of loading the crates. He was, of course, bound

to exercise reasonable care to look out for, and avoid in-
jury from, passing trains; but, in the very nature of
things, he could not be expected to keep a constant watch
up and down the railway track. He had his work to do,
and, of necessity, must give it some share of attention.
According to his testimony, he did look for trains just be-
fore going behind his wagon. His errand there is not
shown to have been unreasonable or unnecessary. It does
not appear just how long he stayed there, but the circum-
stances would indicate a very brief period. He had the
right, also, we think, to place some degree of reliance
upon the presumption that the trainmen would do their
duty, and sound the usual signal or warning of some kind
in approaching the crossing near at hand, and before com-
ing so closely upon him as to involve him in danger. It
was for the jury, therefore, to find whether, in view of
all the facts and circumstances shown in evidence, he
acted with the prudence and caution of a reasonable man.

As to the next subdivision or ground of the motion to
direct a verdict, we have to say that a driver who de-
scends from his wagon for the purpose of putting on a load
under the circumstances here shown, never leaving or
abandoning the immediate charge and oversight of his
team, is certainly not always or necessarily guilty of
negligence, if, for a brief moment, in the prosecution of
his work, he lays down the reins without taking the pre-
caution of tying the horses. The act in this instance may
or may not have been negligent. Fair-minded men may
easily differ in opinion upon that proposition, according
as they do or do not give credit and weight to certain
items of testimony, and in such cases it is elementary
that the court should not direct a verdict. The cases
cited by appellant upon this point differ so materially in
their facts from the one before us that they cannot be
considered applicable or controlling. For instance, in

*Deville v. R. Co.*, 50 Cal. 383, the driver not only got off his wagon, but left his horses unfastened and unguarded while he went into a house. So, also, in *Hoffman v. R. R.*, (Sup.) 63 N. Y. 442, the driver left his team unhitched while he went to the back door of a house to deliver a package. Nothing approaching such recklessness is shown by the record here.

The other suggestion made, that we should peremp!orily hold the plaintiff negligent in seizing this team and in trying to prevent its escape, is too manifestly unreasonable to require discussion. The man, however experienced or prudent, whose first impulse would not be to do the very thing which plaintiff attempted, is a very rare exception to an almost universal rule. Indeed, if plaintiff had coolly stepped out of the way of harm, and made no attempt to stop his frightened horses, and they had been run down by the train, he would have much difficulty in avoiding the point counsel would doubtless make against his claim for damages—that his excessive prudence was in fact gross negligence. *Wasmer v. R. R.*, 80 N. Y. 212 (36 Am. Rep. 608).

II.    Error is assigned upon the court's refusal to instruct the jury upon defendant's request, that if plaintiff did not comply with the ordinance forbidding the leaving of teams unfastened and unguarded upon the streets, and by reason thereof his team ran away, he could not recover.    Error is also assigned upon the failure of the court to direct the jury as to the legal effect of said ordinance upon the plaintiff's negligence. Had the evidence been such as would have justified the jury in finding that plaintiff was in fact guilty of a violation of the ordinance, then the objection here raised might, perhaps, be said to require a reversal of the judgment appealed from.    The record does not disclose such a case.    The ordinance does not forbid the momentary release of the reins by the driver of a team.    What it does

2. INSTRUCTION:

forbid is the "leaving" of his team in the street without being securely "fastened or guarded." Plaintiff did not leave his team, and, being himself at all times in the immediate charge and oversight of his team, it was not left unguarded. The evidence upon this feature of the case is undisputed, and, there being nothing upon which to sustain a finding that plaintiff contributed to his own injury by a violation of the ordinance, there was no error in refusing the instruction asked, or in failing to charge the jury in respect thereto. The mere fact that a violation of the ordinance was pleaded in the answer did not make it necessary for the court to instruct upon the issue so tendered, if upon the trial no evidence was offered upon which the plea could be upheld. The only instruction proper in such case would be to withdraw the special defense from the consideration of the jury, and the failure to give it, if error, is one of which the defendant cannot complain.

III. Appellant complains that, while the court instructed the jury as to plaintiff's duty after the discovery of the approach of the train, it did not instruct as to his duty to look out and discover any danger impending from that source. Without extending this opinion to set out the charge of the court, we will say that we have read it carefully, and think it is not open to the criticism made upon it. The rule for which appellant contends in this respect, while not stated in the words or form which counsel puts it, was, in substance, given by the court, and the principle defining plaintiff's duty to exercise reasonable and active vigilance for his own safety was fairly and repeatedly stated. There was no error to appellant's prejudice in this respect. The eleventh paragraph of the charge, to which appellant takes special exception, undertakes no more than to state the plaintiff's duty after the discovery of the approach of the train, even though defendant may have been negligent in failing to ring the

bell, and is correct. The matter of plaintiff's duty to be
reasonably vigilant to discover the danger and avoid it
was sufficiently covered in other paragraphs.

IV.   The court said to the jury: "The law requires
the persons in charge of a train, when approaching a street
crossing, to ring the bell to warn persons lawfully at or
near its crossing of the approach of the train;
and, when a train is operated along a public
street in a city, where other streets cross at
short intervals, I take it to be the duty of the persons in
charge of the train to ring the bell continuously while the
train is in motion, and that the omission of this duty
would constitute negligence." The statute provides
(Code, section 2072) that persons in charge of a moving
railway engine shall begin to ring the bell at least sixty
rods before reaching a public crossing, and continue such
warning until the crossing is passed. In the platted part
of a city, street crossings, as is universally known, occur at
such frequent intervals that obedience to this rule results
in a continuous sounding of the bell of every engine pass-
ing to and fro along or across these avenues of public use
and travel. Such, indeed, so far as we have observed, is
the practical interpretation placed upon the statute by
railway companies; and the movement of a train upon or
through a network of city streets and crossings, unaccom-
panied by the sound of a bell, is clearly within the pro-
hibition of the statute, to say nothing of the dictates of
common prudence. The evidence tends to show that the
blocks along Leech street have a frontage of about three
hundred feet, so than an engine moving upon appellant's
track would always be within less than sixty rods of at
least two streets, for which it was the duty of the engine-
man to sound the bell signal. It follows, then, that the
statement by the trial court of the general duty resting
upon the appellant to ring the bell in moving its engine
was correct. Neither do we think it had any tendency to

*3. INSTRUC-
TIONS: oper-
ation of
train: negli-
gence.*

mislead or confuse the jury, who were explicitly informed that, in order for plaintiff to recover, he must prove the very act of omission charged as negligence, and that negligence of the company in any other respect, even if proved, would not sustain a recovery.

V. It is finally urged that as plaintiff was neither on the railway track, nor about to cross it, appellant owed him no duty to ring the bell, and that as to him the omission to give the signal was not negligence in

4. CROSSINGS: duty to sound bell.

law or in fact. This court has already held otherwise. In *Lonergan v. R. R.*, 87 Iowa, 757, discussing the same point now urged by appellant, it was said: "It may be presumed that the statute is intended to warn persons at crossings of the approach of cars, and thus enable them to avoid the engine. But the signal enables all persons who may be exposed to danger by the approaching engine to escape it, and such persons may rely upon the discharge of the duty required by the statute, as in all other cases, and act accordingly." In *Ward v. R. R.*, 97 Iowa, 53, we reaffirmed the doctrine of the *Lonergan Case*, saying: "The bell signal is not only for the benefit of those who are on or about to cross the track, but for those who are lawfully using teams near the track." While a different conclusion has been reached by some courts, the rule approved by us is sustained by many eminent authorities; and, being in itself essentially just and reasonable, we have no inclination to overrule our former decisions.

We find no reversible error in the record, and the judgment of the district court is AFFIRMED.