## J. A. WARD v. THE CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, Appellant.

**Negligence:** JURY QUESTION. An engineer of a train running at an unlawful rate of speed through a city failed to give the statutory signals by ringing a bell before approaching a crossing, but blew the whistle in the rear of a wagon that had passed over the crossing just before the train reached it, thereby causing the horses to run away and injure plaintiff. *Held*, that it was for the jury to determine whether the team would have been out of reach of the effect of the sounding of the whistle if the bell had been rung for sixty rods before reaching the crossing, and the train had been running at the statutory speed.

**Practice:** HARMLESS ERROR. The admission of incompetent hearsay evidence is harmless error, where the same fact was established by undisputed, competent evidence.

*Appeal from Montgomery District Court.*—HON. N. W. MACY, Judge.

### TUESDAY, JANUARY 28, 1896.

ACTION at law to recover damages for a personal injury. Trial by jury. Verdict and judgment for the plaintiff, and defendant appeals.—*Affirmed.*

*J. M. Junkin* and *Smith McPherson* for appellant.

*R. W. Beeson, C. E. Richards,* and *N. Hanna* for appellee.

ROTHROCK, C. J.—I. The plaintiff is a farmer, and resides on his farm, six miles southeast of the city of Red Oak. On the twelfth day of December, 1893, he was engaged in hauling straw to the city. He used two wagons. One was driven by himself, and the other by one Larson. They approached the city by the usual traveled road, which is an extension of Eighth

street. The railroad track of the defendant crossed Eighth street within the city limits. The track is elevated above the natural surface of the street some eight or ten feet, and approaches or embankments are made on each side to enable travel to go over the track. These embankments are quite steep. As the plaintiff and Larson approached the crossing, they stopped their teams at the foot of the embankment, on the south side of the railroad, to look and listen for the approach of a train from the east. The team plaintiff was driving was in front of the other, and the plaintiff went ahead of his horses, up on the grade, to where he could see a whistling post to the east, and no train was in sight, nor within hearing distance. The plaintiff started up his team and crossed the track, and Larson followed him. Just after the wagon Larson was driving passed over the track, and while the rear end of his load of straw was within a few feet of the track, a passenger train from the east, running at a high rate of speed, passed over the Eighth street crossing, and, at or about the crossing, two sharp, shrill whistles came from the engine, which frightened Larson's team, and they ran down the slope of the crossing into the plaintiff's wagon and load of straw, upset it, and threw the plaintiff off the load in such a manner that he was severely injured. The plaintiff was about one hundred and sixteen feet from the crossing when the whistle was sounded. The acts of negligence complained of in the petition are (1) that the train was run at an unlawful rate of speed within the corporate limits of the city, and in violation of a city ordinance; (2) that the defendant's employes failed to give any signal of the approach of the train by ringing the bell on the engine at least sixty rods before reaching the crossing, and from that point continuously until the engine passed the crossing; and (3) that they negligently sounded the steam whistle at the crossing, and within

a few feet in the rear of Larson's team.   It was further alleged in the petition that the approaches to the crossing were negligently constructed, but that question was not submitted to the jury, because the manner in which the approaches were constructed and maintained was not the proximate cause of the injury, nor connected therewith.   But the court permitted the plaintiff to show the condition of the approaches, upon the question as to how the plaintiff should have conducted himself in making the crossing, and also as bearing on the question as to the proper management of passing trains. ˚ We discover no error in this limiting the effect of the alleged improper approaches, and we need not further consider that question.

II.   There is no complaint made by the defendant that the plaintiff and Larson did not use every proper precaution in approaching and crossing the track. There is no question of contributory negligence in the case, and the evidence is undisputed that the train was run at a greater rate of speed than that prescribed in an ordinance of the city, which limited it to eight miles an hour.   Witnesses testified that the train passed the crossing at the rate of sixty or eighty miles an hour.   The engineer testified that the speed was twenty-five or thirty miles an hour.   And, without discussing the evidence, it is sufficient to say that the jury were fairly warranted in finding that the bell on the engine was not rung sixty rods from the crossing, and from that point continuously until the crossing was reached, as required by section 1, chapter 104, acts Twentieth General Assembly.

It is urged in behalf of appellant that the failure to ring the bell, and the unlawful rate of speed, were not the proximate cause of the injury. The argument, briefly stated, is that as the trains had crossed the track, and the accident was caused by the whistling at the crossing, no other act of

negligence can be considered, because other acts were remote, and not proximate, and that there should have been a verdict for the defendant, because the evidence showed that the sounding of the whistle was rightful and necessary to avoid a collision with a team at the next street crossing. It may be conceded that the evidence so shows, but we do not think that would excuse the defendant for failing to ring the bell, and the unlawful speed of the train. The bell signal is not only for the benefit of persons who are on, or about to cross, the track, but for those who are lawfully using teams near the track. *Lonergan v. Railway Co.*, 87 Iowa, 755 (49 N. W. Rep. 852, and 53 N. W. Rep. 236). Much has been written upon the subject of what is the proximate cause of an injury, and in actions like this, it is generally a question for the jury. Without reviewing cases, we think the following from the opinion in *Railway Co. v. Kellogg*, 94 U. S. 469, is applicable to the case at bar: "The question always is, was there an unbroken connection between the wrongful act and the injury,—a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? When there is no intermediate, efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it." The acts of the engineer and fireman of the train which frightened the team in this case were a succession of events. If the train had been operated at a lawful rate of speed, the wagons or teams would not have been on or near the crossing, and there would have been no cause for giving the danger signal to the driver of a team at the other crossing. And it was a question for the jury to determine whether the teams would have been out of reach of the effect of the sounding of the whistle if the bell

had been rung for sixty rods before reaching the crossing. It is to be remembered that there was no independent, efficient cause of the injury. All of the acts which resulted were the acts of the employés of the defendant. And it was a question for the jury to determine whether the engineer should have apprehended that the speed of the train, and the failure to ring the bell, would likely imperil those in close proximity to the track, or about to cross it. The jury might well reach that conclusion, and the fact that the engineer thought he was required to sound the whistle at the crossing ought not to be held as an excuse for violating the law and the ordinance of the city.

III. The plaintiff testified that he was about 116 feet from the crossing when he received the injury. One or two witnesses testified that the plaintiff pointed out the place, and that they measured it, and that the distance was 116 feet. Objection was made to the testimony of these witnesses because it was founded upon hearsay. The objection was overruled, and the ruling is complained of. The defendant was not prejudiced by this ruling. The plaintiff's testimony as to the distance is undisputed, and must be regarded as an established fact in the case.

IV. Other questions are presented, which we do not regard as of sufficient importance to require special consideration. We discover no error, and the judgment of the district court is AFFIRMED.