CASE 24—ACTION BY JOHN PENROD'S ADMR. v. L. & N. R. R. CO. TO RECOVER DAMAGES FOR THE DEATH OF PLAINTIFF'S INTESTATE— MARCH 29.

# L. & N. R. R. Co. v. Penrod's Admr.

### APPEAL FROM HOPKINS CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS—REVERSED.

LIABILITY FOR FRIGHTENING TEAMS BY NOISES—RECOVERY FOR NEGLI-
GENCE NOT ALLEGED—FAILURE TO GIVE SIGNALS—CONTRIBUTORY
NEGLIGENCE.

Held:  1. It was error to submit to the jury the question of negli-
gence in failing to give proper signals of the approach of defend-
ant's train, in a case where the specific negligence charged in the
petition, was loud and unnecessary noises from the whistle and
escaping steam, which frightened intestate's team and caused it
to run off and kill him.
2. Defendant's servants in charge of its train, owe no duty, to one
who is in charge of a team on premises, near its track, to avoid
customary and proper noises in the operation of the train, until
they saw his danger.
3. It was the duty of appellant in running its trains through the
city, to give the signals required by law of its approach to the
street crossing, and although the decedent was not using the

crossing, he had the right to rely on these signals being given. Whilst this is not the rule in the country, a just regard for human life, requires that it should be observed in cities.

4. If the decedent had been cautioned that his team would likely be frightened on the approach of the train, and knew it was about train time when the accident occurred, and wrapped the lines around the front of his wagon and got in the back part of it and was shoveling the coal rapidly in the coal house when the train came up, he was guilty of contributory negligence and can not recover.

5. If decedent knew of the approach of the train there can be no recovery on the ground that the signals of its approach were not given.

B. D. WARFIELD, M. K. GORDON, H. W. BRUCE and E. W. HINES for APPELLANT.

A. J. WADDELL, JOSEPH H. LEWIS and W. H. HOLT for APPEL-LEE.

(No briefs in the record.)

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Appellee filed this action, as the administrator of John Penrod, to recover of appellant damages for the loss of the life of his intestate by reason of alleged negligence on its part. The facts are that the intestate was shoveling coal out of a wagon into a coal house. The wagon was standing in a fenced passway, running parallel with the right of way, and adjoining it, in the city of Madisonville. While he was thus shoveling coal, a freight train came up, and, passing by him, stopped near a street crossing a few feet away. It then let off steam, and, having given the backing signal by three blasts of the whistle, proceeded to back in on another track. The team hitched to the wagon, which the intestate was unloading, took fright, and ran off. When the wagon was stopped, he was found lying in it, with his neck broken.

It is insisted that the appellant is liable—First, because there was negligence in letting off steam and blow-

ing the whistle, causing the team to take fright, when the team could be seen near the right of way, and there was reason to anticipate that this would frighten them; second, because the train came up quietly, and without proper signals of its approach, so that the intestate was without warning of the danger.

Appellant contends that the second ground of complaint was not alleged, and therefore should not have been submitted to the jury as the basis of recovery. This is the first question to be determined on the appeal. The material part of the petition is in these words: "Plaintiff says that on March 9, 1898, in this county, said Penrod was killed by the gross negligence of the defendant's agents and servants in the running, management, and operation of its engines and cars; that defendant's track crossed Broadway street, in the city of Madisonville (then a city of some 4,000 inhabitants), and said street, being then one of the most important streets of said city, was then largely and habitually used, with the knowledge of the defendant, daily, by multitudes of pedestrians, teams, and vehicles, and that the coal house of a private residence was then situated very near said street, to-wit, —— feet therefrom, and very near said track, to-wit, —— feet therefrom, and within ——feet from said crossing, and separated from said track by a private roadway leading from said street by said coal house, and adjoining defendant's roadbed, and that persons with teams, hauling coal to and placing it in said coal house, necessarily and rightfully used such private way; that such coal house and private way have so existed and been continuously so used, with the knowledge of the defendant, for more than thirty years, and prior to the purchase or building of the railroad; that there was nothing to obstruct the view of said

coal house, and of persons and teams delivering coal there, from the said railroad track northward for—— yards, nor southward for —— yards, and that a person with a team delivering coal into said coal house, or in said private way, was necessarily in full view from trains approaching from the north for a distance of —— yards that said John Penrod was on said day, with wagon and team, rightfully in said private way at said coal house, delivering coal there, as was his duty, when the defendant's agents and servants in charge of an engine and cars approaching from the north, so negligently and carelessly ran, managed, and operated said engine and cars, and so negligently caused said engine and cars to make loud and unnecessary noises, and so negligently caused and suffered large quantities of steam to escape from said engine when it was near to said team, which escape of steam was unnecessary, and at an improper time and place, and was ordinarily calculated to frighten teams, that they caused said team to take fright and run away, whereby said John Penrod was instantly killed and so plaintiff says that the death of John Penrod then and there resulted from an injury inflicted by the gross negligence of defendant, whereby plaintiff has been damaged in the sum of twenty-five thousand dollars." In addition to the above, appellee filed an amended petition, which is as follows: "Plaintiff, for amendment to his petition, says that, in addition to the negligent acts set forth in the original petition, and as a concurrent act of gross negligence that proximately caused the death complained of, defendant's agents and servants in charge of said engine negligently caused the engine when it was near to the said team to sound its whistle, which sounding of the whistle was unnecessary, and at an improper time and place, and was ordinarily

calculated to frighten teams, and that by this act of negligence, and the acts of negligence set forth in the original petition, defendant caused said team to take fright and run away, whereby said John Penrod was instantly killed."

It is clear from the above that the pleader undertook to state the particular negligence for which a recovery was sought, and that this negligence consisted in the loud and unnecessary noises from the whistle and escaping steam, causing the team to run off. The failure of the appellant to give notice of the approach of the train by proper signals is not alleged. The court, however, instructed the jury as follows: (1) "The court instructs the jury that it is admitted in the pleadings that John Penrod was killed by reason of the team he was driving becoming frightened at defendant's train. If the jury believes from the evidence that such fright was caused by any want of ordinary care on the part of defendant's agents or servants in the management or operation of such train, or in causing the engine to make an unnecessary or improper loud noise, if any such was made, then the jury will find for the plaintiff, unless John Penrod failed to exercise ordinary care for his own safety, as defined in other instructions." (2) "The court instructs the jury that if they believe from the evidence that defendant's agents or servants in charge of the train saw John Penrod and the team of horses in the passway, and his position in the wagon, and if they further believe from the evidence that defendant's said agents or servants had reason to anticipate that the team would become frightened at the approach of the train, and that Penrod was not aware of the train's approaching, and they failed to give any signals of warning of its approach, and if they further believe from the evi-

dence that defendant's agents or servants, with knowl-
edge of John Penrod's perilous position, if perilous, failed
in the management of said train to use ordinary care for
his safety, and that by reason of their failure to so give
signals of the train's approach, if they failed, and to so
exercise ordinary care for his safety, if they failed, the
said John Penrod lost his life, then the law is for the
plaintiff, and the jury will so find." (4) "The court in-
structs the jury that defendant's agents or servants in
charge of the train had the right to make the usual and
customary noises and proper and necessary signals in-
cident to the movement of the train, and if the jury be-
lieve from the evidence that said horse took fright, which
caused the loss of Penrod's life, by the acts of defendant's
agents or servants, in blowing the whistle or causing the
escape of steam, they must find for the defendant, if
they believe from the evidence that said blowing of the
whistle or escape of the steam was usual, necessary, and
proper in the handling and management of the train, un-
less they further believe that said agents or servants at
the time saw or knew the perilous position of Penrod,
if perilous, and had reason to apprehend that injury
would result to him if such noises or signals were made,
in such case said signals and escape of steam were im-
proper, unless same were then necessary or reasonably
necessary for the protection of property or lives in their
charge."

These instructions authorized the jury to find for the
appellee if the fright of the team was caused by unneces-
sary loud noises, or if no signals of warning of the ap-
proach of the train were given, or if appellant's servants
saw or knew the perilous position of Penrod, and had rea-

son to apprehend that injury would result to him if the usual and customary noises and proper and necessary signals incident to the movement of the train were given. There being no allegation of negligence in failing to give proper signals of the approach of the train, and the petition setting out distinctly in what the negligence sued for consisted, it was error to submit this matter to the jury; for the object of written pleading is to apprise the opposite party of the nature of the claim he is to meet, so that he may prepare his defense.

The proof does not show that appellant's servants saw or knew of the intestate's peril, nor does it show that they made any unneccessary or improper noises. It appears that the usual backing signals were given, as it was clearly proper should have been done in moving the train in a city. The only other noise shown was from the escape of steam when the engine was reversed, which, under the uncontradicted testimony, was both usual and necessary. Appellant's servants in charge of its train were not required to keep a lookout on the adjacent premises, and they owed the intestate no duty to avoid noises until they perceived his danger. We do not think the evidence, as a whole, warranted a recovery on either of these grounds. It was usual for the trains to make a good deal of noise at this point, and there is nothing in the evidence to show this improper. Persons, therefore, in the neighborhood should have governed their business accordingly. It is indispensable to the operation of railroads to have switches and additional tracks about their stations. Engines can not be safely reversed without letting off steam. and it is peculiarly necessary to give ample notice when a train is to be backed in a city. If the rule were otherwise, we do not see how train yards can be

maintained in a city at all. To hold appellant liable here on this ground would be, in effect, to declare it negligence to blow a whistle under such circumstances. The proof is clear that the horses began prancing and backing when the train was at the crossing, and then when it whistled and let off steam, and came back towards them, they ran off. There was nothing to apprise the trainmen of the intestate's danger, and no evidence of any negligence on their part in proceeding with the operation of their train.

It was the duty of the appellant, however, in running its trains through the city, to give the signals of its approach to the street crossings required by law, and although the intestate was not using the street crossing, he had a right to rely on these signals being given. While this is not the rule in the country, in cities, where the population is crowded, and persons must necessarily be about the railroad tracks with teams, a just regard for human life can not permit trains to be operated without reasonable notice of their approach. On the return of the case, appellee may amend his pleading, if he desires to do so, so as to present this ground of recovery.

The proof shows that the team the intestate was driving was afraid of the train, and that he had been cautioned to be particular with them in the lane, and told that they would not stand in that lane unless they were held. It also shows that it was about train time when the accident occurred; that the intestate wrapped the lines around the front of the wagon, and then got in the back part of it, and was shoveling the coal rapidly into the coal house, when the train came up; that when the horses started he grabbed for the lines, but whether he reached them or not the witnesses could not tell. On this proof, the court

should have instructed the jury that, if the team was likely to be frightened by the trains, and the intestate knew it, and also knew of the approach of the train, or had reason to know it, he was guilty of contributory negligence, and could not recover. The object of giving signals of the approach of a train is to apprise people of its coming. There is some evidence in the record that the deceased was facing the train as it approached him, and, if he knew of the approach of the train, there can be no recovery on the ground that the signals were not given. Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.