WILLIAM H. EVERETT v. GREAT NORTHERN RAILWAY COMPANY.[1]

March 15, 1907.

Nos. 14,938—(106).

**Violation of Statutory Duty.**

The violation of a statutory duty is the foundation of an action in favor of such persons only as belong to the class intended by the legislature to be protected by such statute.

**Failure to Ring Bell at Railroad Crossing.**

A railway company is not under a legal duty to give the signal required by G. S. 1894, § 6637 (R. L. 1905, § 5001), for the benefit of a person who is driving a team along a street parallel to the railway track near a crossing, but who does not intend to use the crossing.

**Same—Horses on Parallel Street.**

Where, under such circumstances, the approach of the train frightens the horses and causes them to run away, negligence cannot be predicated upon the failure to give the crossing signals in order that the driver may have warning and an opportunity to care for his team.

**Moving Freight by Gravity.**

The moving of a freight car by gravity on a track running along a street, in charge of a brakeman, at a slow rate of speed and with no unusual or unnecessary noise, is not negligence, and no cause of action arises in favor of a person who is driving along the street parallel with and in front of the moving car, and whose horses are frightened and caused to run away by the noise of the approaching car.

Action in the district court for St. Louis county to recover $15,000 for personal injuries. The case was tried before Cant, J., and a jury, which rendered a verdict in favor of plaintiff for $500. From a judgment entered pursuant to the verdict, defendant appealed. Reversed, with directions to enter judgment for defendant.

*W. R. Begg, J. A. Murphy,* and *Heber McHugh,* for appellant.
*Martin Hughes* and *Baldwin, Baldwin & Dancer,* for respondent.

ELLIOTT, J.

The accident out of which this case arose occurred in the village of Hibbing. Second and Third avenues of the village are public streets

[1] Reported in 111 N. W. 281.

running north and south. The streets cross these avenues at right angles. The defendant's main line and switching tracks cross First, Second, and Third avenues. On the south side of the tracks, running parallel therewith, is a driveway, known as "Railroad Street," which commences beyond First avenue and crosses Second and Third avenues. This street is from thirty to forty feet wide. Near First avenue there branches off from defendant's main yard a track, called the "Industry Track," which runs southeastwardly, and after crossing Second avenue it runs along in Railroad street and ends at Third avenue. This track reaches a number of warehouses and lumber sheds, and is largely used for delivering single cars, with loads, at warehouses. For a number of years it has been customary, in delivering and placing these single cars, to cut the car from the main train while it is moving slowly. A brakeman on the car controls its speed, and rides it into place near the store or warehouse where it is to be unloaded, and there stops it by applying the brake. Both the passenger and freight depots of the defendant are in this switching yard, between Second and Third avenues. Switching is carried on in the yard almost continuously. The distance between First and Second avenues is about four hundred and fifteen feet.

On October 5, 1904, the plaintiff, Everett, was employed by the village of Hibbing in hauling rock from a point on Railroad street, between First and Second avenues, where it had been unloaded from trains. About 11:40 a. m. he came south on Second avenue to Railroad street and drove over to the rockpile. One of his horses was nervous, and would prance and jump at the noise of engines and trains. The horse was afraid of hand cars and of cars moving alone. Because of the noise caused by the switching, the animal commenced to prance about the time it reached the rockpile. He was frightened, jumped, and could not be made to stand still. The foreman in charge of loading the rock, upon noting the condition of the team, told Everett to drive his "crazy team" to a place of safety and there wait until they were through switching. Everett then drove west on Railroad street to near First avenue, where he turned the team about so that the horses faced toward Second avenue. As he turned he saw an engine and some cars, and heard the bell upon the engine ringing. These cars had been switching and backing in that vicinity all the

morning, and had been observed by Everett. While the team was standing here the man in charge of the work said to plaintiff "Don't put on any more until after dinner. You can go to dinner, and get back a little earlier." Plaintiff then drove east along Railroad street, toward Second avenue, a distance of about four hundred feet, before the accident occurred. On the way he passed a warehouse, and about forty feet east of this warehouse there was a lumber pile. The railroad track was to his left, beyond the warehouse and lumber yard, and converging toward Railroad street. As Everett passed the opening between the warehouse and the lumber pile, he looked to see if any cars were coming, and saw none. The distance from the lumber pile to where the accident happened is about a hundred fifty feet. After passing the lumber yard there was nothing to obstruct the view of the track.

As the plaintiff was driving along he was sitting on the dump boards of his wagon with his feet hanging down. He says that he looked east, but did not look back after passing the lumber yard. The team was traveling about four miles an hour. As he drove along one of the horses continued to prance and jump so as to attract the attention of bystanders. As the team approached Second avenue, a single box car with a brakeman on top of it came along the track behind him. This track was parallel to the road, and ran within some twelve feet of the part of the highway on which the wagon was traveling. There is some conflict about the rate of speed at which the car was approaching. The appellant claims that it was traveling at practically the same speed as the team, and remained fifty to seventy five feet behind it all the time. The respondent claims that it came at a more rapid pace, and that at the time of the accident the front of the car had reached the rear part of the wagon. The claim is that as the car approached the horses became more frightened, and began to dance and finally jumped to one side, thus bringing the front wheel of the wagon against the sidewalk, over which it passed and fell into a depression some eighteen inches deep. The respondent claims that the board on which he was sitting then broke and caught in the wheel, so as to cause it to fly up and strike him and knock him from the wagon under the horses' feet. The appellant, on the other hand, claims that the board

on which Everett was sitting broke, and, becoming entangled in the wheel, caused the team to start to run.

For the purposes of this appeal we accept respondent's story that the horses were frightened by the approach of the car and swung sharply to the right and ran away. The car was making no unnecessary noise as it approached. It had no engine attached to it, and, of course, was not ringing a bell or gong, or giving any such signal of its approach. The wagon was rattling so that Everett did not hear the car. The car had been detached from a train of four cars and an engine near First avenue, about four hundred feet from the point where the accident occurred. At the time it was cut off the bell on the engine was ringing. It was customary to spot in cars in this way, and as many as fifteen or twenty cars were handled in this manner in one day. It was not customary to handle the cars with an engine on the local track, and the evidence tends to show that a single car can be handled more safely with a man handling the brake than when attached to an engine. The car could be stopped by the brake within three or four feet. Everett testified that he was unfamiliar with this method of "shunting" cars. Everett did not intend to cross the railroad track on Second avenue, but intended to turn south when he reached the avenue and go home for his dinner. Upon this condition of the facts the jury returned a verdict in favor of the plaintiff, and the defendant appealed from a judgment entered thereon.

1. The issues involved were the negligence of the defendant and the contributory negligence of the plaintiff. The specific negligence on the part of the defendant charged in the complaint is:

> That while plaintiff was so driving, and just before the said team reached the intersection of said Second avenue and Railroad street, the defendant negligently and carelessly, and without ringing any bell or blowing any whistle, and without giving any warning of any kind, backed a car by means of a locomotive engine upon said track at a switch situated at a point westerly from said Second avenue, and in the rear of plaintiff, all of which was done upon said public street, within the limits of the said village of Hibbing. Thereupon, and when plaintiff's team was entering upon the street crossing at the inter-

section of said Railroad street and said Second avenue, and while said team and said wagon in which plaintiff was riding were in a position parallel with said railroad track of the defendant, the defendant carelessly and negligently caused said car to be moved over said track from said switch easterly past plaintiff and his said team and wagon; that in moving the said car the defendant carelessly and negligently entered as aforesaid upon said track with said engine attached to said car; that after said engine and said car had crossed said switch the defendant negligently and carelessly, without ringing any bell or sounding any whistle, and without giving any warning of any kind, shunted said car eastward along said track; i. e., men in charge of said engine and car started said car eastward upon said track, while the same was attached to said engine, and after sufficient headway was attained to drive said car well down said track past said Second avenue, said men in charge of said engine and car disconnected said engine from said car at a point westerly from said Second avenue, and near said switch, thereby causing said car to pass along said track unaccompanied by any brakeman or other person and unattached and separated from said engine.

Upon this allegation plaintiff contended that the railway company was negligent, upon general common-law principles, in failing to properly handle its car in view of all the circumstances and surrounding conditions, and that it was guilty of negligence as a matter of law because of failure to ring the bell or blow the whistle as the car approached one of the crossings, as required by the statutes of the state.

The railway company claims that it was handling the car in a prudent, customary, and safe manner, and by the means generally employed by railroads; that the car was moving at a slow rate of speed, was equipped with safe brake appliances, and was manned by a competent brakeman who could stop the car with his brakes within three feet upon any emergency, much more quickly than it could have been stopped by an engine, had there been one attached; that it was pursuing its lawful occupation and doing everything conducive to the safety of the public and its employees; that it had a competent man in

charge of the car, and a watchman in the vicinity of the crossing; that it kept a bell on its engine as it was operating between First and Second avenues, and thereabouts, continuously ringing for warning and the safety of the public at crossings; that plaintiff had worked with his team around this yard for two weeks before, and was familiar with the switching operations and the tracks, and knew that at all times cars would be spotted in and moved over these tracks, including the team track; that the plaintiff had a nervous and unruly pair of horses, and that he was guilty of contributory negligence when he turned his team at First avenue, and saw the engine with cars attached, and knew that at any moment the engine or some of the cars might be switched down this team track; that after passing the lumber pile east of the warehouse, and in going thereafter to Second avenue, a distance of a hundred and fifty feet, he continuously faced east, and never looked back to see if the car or engine was following.

2. G. S. 1894, § 6637 (see R. L. 1905, § 5001), provides:

> A person acting as engineer, driving a locomotive on any railway in this state, who fails to ring the bell or sound the whistle upon such locomotive, or cause the same to be rung or sounded, at least eighty rods from any place where such railway crosses a traveled road or street on the same level (except in cities), or to continue the ringing such bell or sounding such whistle at intervals, until such locomotive, and the train, to which such locomotive is attached, shall have completely crossed such road or street, is guilty of a misdemeanor.

Respondent claims that this statute created a duty on the part of the railway company to him, and that its violation was negligence as a matter of law. We are required to determine two questions: (1) Does section 6637, G. S. 1894 (see R. L. 1905, § 5001) apply? And (2) if not, was the defendant negligent, regardless of the statute?

(a) Statutory provisions similar to this are in force in many states, and the authorities are not entirely uniform upon the question of their application. The learned trial court took the view that the statute is for the benefit of all who are on the highway or in the vicinity of the crossing, and who are injured by the failure of the company to

:give the required signals. A careful examination of the authorities .and the reasons upon which they rest has convinced us that this was ,error, and that the statute cannot properly be given so wide an application. The violation of a statutory duty can be made the foundation of an action only in favor of a person belonging to a class intended by the legislature to be protected by such regulations. Anderson v. Settergren, supra, page 294, 111 N. W. 279; Akers v. Chicago, St. P., M. & O. Ry. Co., 58 Minn. 540, 60 N. W. 669; Gibson v. Leonard, 143 Ill. 182, 32 N. E. 182, 17 L. R. A. 588, 36 Am. St. .376; Gorris v. Scott, L. R. 9 Exch. 125; Atkinson v. Newcastle, L. R. 6 Exch. 404. The plaintiff must therefore show that he is within :the class which the legislature intended to protect by the statute which requires the giving of the designated signals.

In a recent standard work, it is said: "There is conflict of authority as to who may claim the benefit of the statutory signals, and it may ·depend somewhat upon the language of the particular statute. Where the statute does not specifically designate the class to whom the duty ·is owing, the courts have usually construed it to be due only to those who are about to use, are using, or have lately used, the crossing, and have held that no others could recover for injuries resulting from a failure to give the signals; but other courts have gone further, and hold that the duty is for the protection of all persons lawfully at or near the crossing from any danger to be apprehended from the sud- ·den approach of a train without warning." Summarizing the cases, the author says: "According to what we regard as the better rule, the company owes no duty to one who is not upon the highway near the crossing to give the statutory signals; and it is not, therefore, liable to one whose horse, while upon a parallel highway which does not cross the track, or in a field, is frightened and runs away because the statutory signals were not given for the crossing of a neighboring highway, and the owner thus failed to hear and prepare for the approach of the train." 3 Elliott, Railroads, §§ 1158, 1264. Judge Thompson, in his work upon the Law of Negligence, says: "It has been well reasoned that this omission is negligence as matter of law only when injury results therefrom to persons or animals endeavoring ·or intending to cross the track upon a street or highway crossing; .and this, for the manifest reason· that the object of the statute is to

protect persons and animals. in this situation and not in other situations; the prevailing view being that such signals are intended only for the protection of persons or vehicles on the crossing, or about to use the crossing, and not (for example) for the protection of those driving along a highway parallel to the railroad." 2 Thompson, Neg. §. 1560. Another well-known writer says: "Statutes requiring signals at crossings are enacted only for the benefit of persons intending to cross the track at a lawful crossing or proceeding on a highway parallel with the track. Persons walking along the track, or trespassing thereon, or occupied in work upon adjoining land, are not entitled to the benefit of such statutes, whatever may be their common-law rights." 2 Shearman & Redfield, Neg. § 470. See, also, Patterson, Railroad Law, § 160; 2 Rorer, Railways, p. 1004.

The cases sustain these views. The first in which the question seems to have been considered is People v. New York, 25 Barb. 199. The action was to recover the statutory penalty imposed for running a train over a highway without giving the required signals. At the crossing in question the railroad passed above the highway on a bridge. The statute imposed a penalty for failure to give the signal "where the railroad shall cross any traveled public road or street." It was held to apply to overhead as well as grade crossings. But see Favor v. Boston, 114 Mass. 350, 19 Am. 364. The statute under consideration in Harty.v. Central, 42 N. Y. 469, required the company to cause a board with the inscription, "Look out for the locomotive!" to be placed wherever a public highway crossed a railroad on the same level, and within three hundred feet of the crossing to ring a bell or blow a whistle as the train approached such crossing. The statute was held to impose no duty upon the railroad company to give the warning to a person who was walking on the track within three hundred feet of the crossing. The person killed was probably a trespasser, but this fact was regarded as of no importance. "I shall assume," said Mr. Justice Earl, "that the intestate was lawfully upon the railroad at the time of the accident. * * * The sole object of this law, it seems to me, was to protect persons traveling upon the highway at or near the crossing. * * * Railroad companies were not required by this law to ring the bell nor sound the whistle when the highway passed along the railroad nor when it passed at an elevation over it, or un-

der it; nor were they required to take these precautions for the protection of persons walking along upon the railroad."

In Randall v. Baltimore & O. R. Co., 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003, Mr. Justice Gray, in reference to a similar statute, said: "There is no evidence that the engine which struck the plaintiff was about to cross a highway; and the main, if not the sole, object of the statute evidently was to protect travelers on the highway. * * * It may perhaps include passengers on the trains or strangers not trespassers on the line of the road"—citing O'Donnell v. Providence, 6 R. I. 211, and Harty v. Central, supra. In the O'Donnell case the plaintiff was struck by an engine while he was walking along the track at a point some distance from a crossing. The statute required a bell to be rung at least eighty rods from the place where the railroad crossed the highway, and to be kept ringing until the engine crossed the highway. The evidence showed that at the time of the accident plaintiff was not "either at the place where the railroad crossed the public highway on the same level, or upon the highway which was so crossed by the railroad, but at a considerable distance from any such highway and upon the track of the railroad." Mr. Justice Brayton said: "Now, in looking at the provisions of this statute, we think the purpose and object of them are reasonably clear. The act does not require the bell to be rung at or near the approach to any place where any private passway crosses the railroad, nor near any place where the railroad crosses even a public highway above or below the level of such highway, but only near highways or turnpikes which the railroad crosses on the same level, and where only there would be danger of a collision of the train with individuals, or their horses, carriages, or teams. The bell is required to be rung for the distance of eighty rods before coming to such crossings. From the usual speed with which trains move, the time between the first signal from the bell till the engine would cross the public highway would be barely sufficient for reasonable notice to persons approaching such crossing— from thirty to forty six seconds. It is quite evident that it could not have been intended to warn people elsewhere. * * * We are all of opinion that this enactment was not for the benefit of persons in the situation of the plaintiff."

A case very much in point is that of St. Louis v. Payne, 29 Kan. 166. The statute provided that "a steam whistle shall be attached to each locomotive engine, and be sounded three times at least eighty rods from the place where the railroad shall cross any public road or street, except in cities and villages, under a penalty  *  *  *  and the corporation shall also be liable for all damages which shall be sustained by any person by reason of such neglect." The plaintiff hitched his team to a post at a mill about one hundred yards from a railroad crossing, and it was frightened by an approaching freight train and ran away. Chief Justice Horton said: "Payne was in the mill, and his team was hitched when the whistle ought in the first instance to have been sounded. He was not then traveling on the highway at or near the crossing, nor was his team at large near the crossing. His only purpose in wanting the whistle sounded was to give him notice of the approaching train, so that he might leave the mill and hold or look after his team. As thus situated, the railroad company owed him no duty under the statute to sound the whistle." Mr. Justice Brewer concurred, because it did not appear but that the horses were hitched on private grounds. In Missouri v. Pierce, 33 Kan. 61, 5 Pac. 378, the same statute was held not to be for the benefit of the owner of a cow which was killed at a crossing within a village. The statute did not require the bell to be rung or the whistle blown at such crossings, but it did require the signals at a crossing just outside the village limits. "The purpose of the legislature," said the court "in requiring this warning to be given before reaching a highway, is manifestly to afford protection to persons or property that may be upon or passing over such highway, and therefore the omission of the company to comply with this statutory requirement cannot be held to be negligence as to any injury done except at the crossing of the particular highway for which the whistle is required to be sounded." Quoted with approval in Clark v. Missouri, 35 Kan. 350, 11 Pac. 134.

In East Tennessee v. Feathers, 78 Tenn. 103, the statute was held to have no application where a person was injured while traveling along a public road parallel to the railroad. "It seems clear," said Mr. Justice Freeman, "this language imposes a duty on the company in order to give warning to persons about to cross the road, or who may be in the act of crossing possibly, or had just passed over the road;

but it does not apply to parties who are not about to cross the road, but are simply traveling alongside, as in this case, showing an evident purpose not to cross at all." In Louisville v. Hall, 6 South. 277, 87 Ala. 708, 4 L. R. A. 710, 13 Am. St. 84, it appeared that the plaintiff, a brakeman, was injured by being struck by an overhead bridge. "The bridge in question," said Chief Justice Stone, "was part and parcel of the public highway. The record affords evidence that on the trial below the question was considered whether it was the duty of the defendant corporation 'to blow the whistle or ring the bell at least one-fourth of a mile before reaching [a] public crossing * * * and continue to blow the whistle or ring the bell at short intervals until the train passed the crossing.' Code of 1886, § 1144. That statute has nothing to do with this case. Its design was to warn and protect persons who, at a public crossing, pass across and directly on the track, and who would be in danger of being struck and run over by an approaching train. Alabama Gr. So. R. R. v. Hawk, 72 Ala. 112 [47 Am. 403], N. C. & St. L. R. R. Co. v. Hembree, 85 Ala. 481 [5 South. 173]." To the same effect, see Flint v. Norwich, 110 Mass. 222. In Christy's Admr. v. Chesapeake, 35 W. Va. 117, 12 S. E. 1111, the statute was held to be intended for the protection of those using the track at the crossing, and not for those using it elsewhere, and therefore no duty in this respect was owing to a section hand, an employee of the road, who was struck while standing on the track. The same rule had previously been applied in the case of a person using the railway tracks as a footpath. Spicer v. Chesapeake, 34 W. Va. 514, 12 S. E. 553, 11 L. R. A. 385.

In Williams v. Chicago, 32 Ill. App. 339, the statute was held not to be for the benefit of a person plowing in a field adjacent to and a short distance from a crossing. In affirming this case, the supreme court of Illinois said: "Similar provisions exist in the statutes of other states, and the uniform current of authority is in favor of the construction that the requirement is for the benefit of travelers upon the highway. In some of the cases the obligation to ring the bell or blow the whistle exists where the grade of the railroad track and that of the highway are on the same level; in others, where the track is upon a bridge raised above and over the highway. In some of the cases it is held that the duty of giving the signal is exacted in order to

protect travelers from actual collision with passing trains; in others, in order also to enable them to secure their horses against taking fright at the trains when they pass. In one case the railroad company was held liable to one who had passed the crossing; in another case, to one traveling upon a highway parallel with the track towards a highway crossing the track. But in all these cases the person who has the right of recovery is a person who is on the highway either at the crossing or elsewhere. Wherever the hazard to be provided against is the danger of damage by the frightening of teams, the teams are those which are traveling upon the public highway at or near the crossing." Williams v. Chicago, 135 Ill. 491, 26 N. E. 661, 11 L. R. A. 352, 25 Am. St. 397. To the same effect Holmes v. Central, 37 Ga. 593. In Maney v. Chicago, 49 Ill. App. 105, it is said: "The object of the statute in requiring signals is to protect persons or animals about to cross the track and to obviate the danger of collision at highways or street crossings. Non-performance of this statutory duty is negligence as a matter of law only when injury results therefrom to persons or animals endeavoring or intending to cross the track of the railroad upon a street or highway. Roden v. C. & G. T. Ry. Co., 133 Ill. 73 [24 N. E. 425, 23 Am. St. 585]. If one in the vicinity of, but not intending to use, a crossing, may hold a railway company liable for injuries caused by a failure to give the statutory signals, the liability must grow out of peculiar facts and circumstances, by reason of which the injured party had a right, in the exercise of ordinary care, to rely upon and wait for the signals and making an omission to give them negligence in fact."

In Pennsylvania v. Fertig, 34 Ind. App. 459, 70 N. E. 834, it is held that the statutory duty is imposed, not merely for the protection of travelers from actual collision with passing trains, but also to afford opportunity to travelers in vehicles drawn by animals to secure them against taking fright at passing trains. From the facts it appears that this statement must be confined to such as were traveling upon the highway with the intention of crossing the railway track.

New York v. Martin, 35 Ind. App. 669, 72 N. E. 654, very closely resembles the case at bar. The statute required that the trains should give signals on approaching a crossing, and provided that the company should "be liable in damages to any person or his representatives who

may be injured in property or person * * * by the failure or neglect" to do so. It was held not to apply to a person who was approaching a railroad crossing without intending to cross, and who was just turning in to a side road, which ran parallel to the railroad track, when his horse was frightened by the approach of a train without giving the statutory signals. The court said: "The statute cannot be invoked in favor of the appellee, unless it may properly be said to be within the intention of the legislature to create a legal duty on the part of the railroad company to give warning as indicated in the statute to such traveler. A railroad company unless specially otherwise required by statute, is entitled to operate its railroad in such a locality in the usual manner, without thereby becoming liable to travelers upon highways running parallel with the railroad, or in the neighborhood thereof, and is only liable, if at all, for injuries to such travelers through unusual or unnecessary causes attributable to negligence or wilfulness. This is necessarily included within the privileges conferred by the granting of a franchise to construct and operate a railroad in such localities. * * * Because, however, of the great danger of injuries to persons and property at grade crossings and the manifest need, therefore, of giving warnings of the approach of trains, without reference to the judgment or discretion of the railway employees in charge of locomotive engines, the legislature prescribed the minimum warnings by means of whistle and bell. The requirement has express reference to the highway crossings, and designates distances therefrom at which the whistle must be sounded and at which the ringing of the bell must be commenced, to be continued until the highway has been crossed. The signals are to be given when the engine 'approaches the crossing.' It has been held as within the remedy contemplated that the statute is available for the protection of travelers, not only when on the railroad at the crossing, but also when approaching for the purpose of crossing, and in some cases the statute has been applied when the injuries occurred immediately after crossing. It may be available to passengers on the railway trains. It is plainly not for the benefit of trespassers upon the railway track, however beneficial the warnings might be to such persons. Nor is it within the intent of the legislature to create, by such requirements, a duty of the railroad company toward persons at work with animals in adjoining fields, or

persons traveling upon highways near the railroad, not purposing to go upon the crossing; and it is manifest that for persons so situated such noises frequently or ordinarily would not conduce to safety, but, so far as they would produce any effect, would tend to contribute to danger." For an application of the same principle, see Indiana v. Neal (Ind. Sup.) 77 N. E. 850.

In Jenson v. Chicago, 86 Wis. 589, 57 N. W. 359, 22 L. R. A. 680, it appeared that the plaintiff was traveling along a highway or wagon road which passed under a railroad bridge. As he passed under the bridge, his horse was frightened by the approach of a train, became unmanageable, and ran away. It was held that he could not avail himself of the failure of the engineer to give the signals required by the statute. The court said that "all the statutory regulations and liabilities on the subject of railroad crossings apply only to such as are constructed at even grade with the highway, and none of them are applicable to a crossing constructed above or below the highway."

In Reynolds v. Great Northern Ry. Co., 69 Fed. 808, 16 C. C. A. 435, 29 L. R. A. 695, it appeared that the plaintiff was driving along a road parallel with and about twelve feet distant from the railroad track. "Our conclusion is," said Judge Sanborn, "that a statute which requires railroad companies to give a warning signal of the approach of trains to their crossing of a road or street, imposes no duty to give such warning to those who have not lately used, who are not using, and who do not intend to use the crossing, and such parties cannot recover of the railroad companies for a failure to give the warning. The purpose of such a statute is to warn those who have lately used, those who are using, and those who are about to use the crossing. It imposes a duty upon the railroad company to give to these persons the statutory warning, and a failure to give it is a neglect of duty to them, for which they alone may recover, if injury results. These views are supported by the great weight of authority."

In Burger v. Missouri, 112 Mo. 238, 20 S. W. 439, 34 Am. St. 379, the statute was held not to apply in favor of a boy who was passing through between the cars of a train which had been left standing on a crossing. The train started without giving any signal. The court said that the statute "has no application to one situated, as plaintiff was, in the middle of the train and between two cars, but was intended

to give warning of the approach of a train to persons who might be crossing or intending to cross the railroad over a public highway." See, also, Bell v. Hannibal, 72 Mo. 50; Evans v. Atlantic, 62 Mo. 49; Rohback v. Pacific, 43 Mo. 187. For a case upon similar facts, see Elwood v. New York, 4 Hun, 808.

In Melton v. St. Louis, 99 Mo. App. 282, 73 S. W. 231, the plaintiff was driving on a highway parallel with the track when his horse was frightened by an approaching train. The train was about one-quarter of a mile from one crossing and a half mile from another which it had recently passed over. The plaintiff had not crossed the track at the crossing behind, and did not intend to cross the track ahead of him. The court said: "As the statutory precautions requiring signals to be given by the engine of a railroad train approaching a crossing of a public street or highway have been held in this state, as well as in other states, to be intended for the warning and protection of persons crossing or intending to cross a railroad over a street or public road, by giving such persons upon the public highways notice of an approaching train, respondent, under the conditions presented and at the place of the accident, was not within the protection of the statute, and proof of omission by appellant's train to whistle and ring at the eastern or western crossing in obedience to the law did not render it liable for the damages sustained by him. * * * The claim of plaintiff that, if the statutory signals had been given at the eastern crossing, he would have been warned of its approach and escaped to a part of the highway not so near the railroad track, is illogical, remote, and but conjectural. If the train, as it approached respondent, had been emitting signals continuously by whistle and bell, the peril of plaintiff would have been but increased, the probability of his horses taking fright but made greater." To the same effect see Grand Trunk v. Rosenberger, 9 Can. Sup. Ct. 311, 19 Am. & Eng. R. Cas. 8, Rosenberger v. Grand Trunk, 8 Ont. App. 482, 15 Am. & Eng. R. Cas. 448.

In Central v. Raiford, 82 Ga. 400, 9 S. E. 169, it was said that, although the statute was intended primarily for the benefit of persons crossing the track and not those walking along the track, a failure to comply with the statute was nevertheless evidence of negligence, which may go to the jury.

(b) But there are cases which make a wider application of these statutes, and hold that they are for the benefit of all persons who are in the vicinity of the crossing, including those who have not used and have no intention of using the same. As we have seen, it is held in Georgia that the failure to give the required signals is evidence of negligence. Western v. Jones, 65 Ga. 631; Central v. Raiford, 82 Ga. 400, 9 S. E. 169. See, also, Rupard v. Chesapeake, 88 Ky. 280, 11 S. W. 70, 7 L. R. A. 316; Chesapeake v. Ogles, 24 Ky. Law, 2160, 73 S. W. 751. But this means no more than that it is evidence to go to the jury as would be the case if no statute existed. Wakefield v. Connecticut, 37 Vt. 330, 86 Am. Dec. 711, is generally cited in favor of the rule that the statute is not for the benefit of those only who are using the crossing, and language to that effect is found in the decision. Thus the court said: "It seems plain that the purpose of the law is to secure as much safety as could be done by notice of the approach of an engine against accidents at, and by reason of, such crossing. * * * We think it would be an unwarrantable restriction of this provision of the statute to hold that the duty thereby imposed has reference only to persons approaching, or in the act of passing, the crossing. In our judgment that duty exists in reference to all persons who, being lawfully at or in the vicinity of the crossing, may be subjected to accident and injury by the passing of engines at that place." It should be noted, however, that the plaintiff had just driven over the crossing when the approach of the train frightened his horses and caused them to run away. Upon the facts the application of the strict rule would have established a cause of action in favor of the plaintiff.

In Ransom v. Chicago, 62 Wis. 178, 22 N. W. 147, 51 Am. 718, it was held that a failure to give the crossing signals is a negligent act, of which one may complain who is injured by such failure while driving on a road parallel to the track and in the vicinity of the crossing. An examination of Jenson v. Chicago, 86 Wis. 589, 57 N. W. 359, 22 L. R. A. 680, Barron v. Chicago, 89 Wis. 79, 61 N. W. 303, and Mills v. Chicago, 94 Wis. 336, 68 N. W. 996, makes it doubtful whether this case is now recognized as controlling in that state. In Cahill v. Cincinnati, 92 Ky. 345, 18 S. W. 2, it was held that persons lawfully using a private crossing are entitled to the benefits of the signals which they knew it was the duty of the railroad to give at a near-

by public crossing. See, also, the language of the court in Norton v. Eastern, 113 Mass. 366. In Sanborn v. Detroit, 91 Mich. 538, 52 N. W. 153, 16 L. R. A. 119, it was held by a divided court that the statute applied in favor of a person who was injured while using a private crossing at a distance from the highway at which the signals should have been given. In Louisville v. Penrod's Admrs., 108 Ky. 172, 56 S. W. 1, it was held that the statute was for the benefit of persons who are about to cross the track, and also of persons in charge of teams on adjacent premises. See, also, St. Louis v. Boback, 71 Ark. 427, 75 S. W. 473.

A distinction has been made between the liability to persons who are on the railway grounds in the vicinity of crossings and those who are on private grounds or highways which do not cross the track. This distinction seems to have been in the mind of Mr. Justice Brewer when he wrote the short concurring opinion in St. Louis v. Payne, 29 Kan. 166. In Lonergan v. Illinois, 87 Iowa, 755, 49 N. W. 852, 53 N. W. 236, 17 L. R. A. 254, the plaintiff was lawfully on the depot grounds, unloading corn into a crib, from which it was to be shipped over the defendant's road. The crib was near the crossing, and the approach of a train without signals frightened the team. "It may be presumed," said Chief Justice Beck, "that the statute is intended to warn persons at the crossings of the approach of the cars, and thus enable them to avoid the engine. But the signal enables all persons who may be exposed to danger by the approaching engine to escape it, and such persons may rely upon the discharge of the duty required by the statute, as in all other cases, and act accordingly. It is therefore plain that the plaintiff sustained injury by the neglect of the defendant's employees in omitting the signal, and may recover therefor." After a rehearing an opinion was filed in which the effect of the general language used in the original opinion was somewhat restricted. Stress was placed upon the fact of the relation existing between the railway company and the plaintiff, and that the latter was upon the company's grounds at its invitation for the purpose of transacting business with it. See the subsequent cases of Ward v. Chicago, 97 Iowa, 53, 65 N. W. 999, and Mitchell v. Union, 122 Iowa, 237, 97 N. W. 1112.

In Chicago v. Metcalf, 44 Neb. 848, 63 N. W. 51, 28 L. R. A. 824, importance was attached to the fact that the plaintiff was upon the

grounds of the railway company, where he had driven his team for the purpose of unloading a car which was standing upon the side track. The court said: "Plaintiff was lawfully upon the company's land, having reached it by a means provided for the purpose," and was entitled to rely upon the giving of the statutory signal. The great weight of authority is against the view taken by the trial court. The contrary view is also in harmony with the cases in this state which construe and apply similar statutes. Akers v. Chicago, St. P., M. & O. Ry. Co., 58 Minn. 540, 60 N. W. 669; De Blois v. Great Northern Ry. Co., 71 Minn. 45, 73 N. W. 637; Wickenburg v. Minneapolis, St. P. & S. S. M. Ry. Co., 94 Minn. 276, 102 N. W. 713. The denial of the benefit of these statutes to a trespasser is not a penalty upon trespassing. The trespasser cannot recover because the railway company owes him no duty in this respect.

3. It is apparent from the way in which the case was tried and submitted and from the judge's memorandum, that the plaintiff relied principally upon the failure of the railway company to give the statutory signal. But it is claimed that there was evidence tending to show that the defendant was negligent in the management of the car, regardless of the statutory provision in reference to signals on approaching crossings and that the verdict must, therefore, stand as against the defendant's motion for judgment. We are unable to find anything in this record which tends to show negligence on the part of the railway company in the management of the car, if, as we have found, no statutory duty existed to give the signals for the crossing. The car was being handled in the customary manner. It was in charge of a brakeman, who was able to control it as readily and effectually as could have been done had there been an engine attached. No unusual or unnecessary noise was made, and the car followed or approached the plaintiff at a very slow rate of speed. The car in itself was not an object which was calculated to frighten horses of ordinary gentleness, and others were used, under the circumstances and conditions, at the risk of the driver. The team was frightened by the ordinary and usual operation of the car, and, as the statutory duty to give the signals was not due to the plaintiff, there was nothing done or omitted by the company which could give rise to a cause of action in favor of the plaintiff.

Hendricks v. Fremont, 67 Neb. 120, 93 N. W. 141, Fares v. Rio Grande, 28 Utah, 132, 77 Pac. 230, 3 Am. & Eng. Ann. Cas. 1065, and many cases cited in a note thereto. The defendant's motion should therefore have been granted.

The judgment is reversed, with directions to enter judgment in favor of the defendant.