# L. & N. R. R. Co. v. Richmond.

(Decided February 26, 1924.)

## Appeal from Letcher Circuit Court.

Railroads—Driver Not Intending to Use Crossing Not Entitled to Signals.—Ky. Stats., section 786,. requiring signals by trainmen on approaching public crossing, does not protect persons driving restive mule on highway near crossing without intending to use the crossing, and they have no right to rely on the train employees obeying the law by giving signals to warn of approach of train.

WOODWARD & WARFIELD, D. D. FIELDS, DAY, & FIELDS and MORGAN & HARVIE for appellant.

DAVID HAYS and R. MONROE FIELDS for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

This is an appeal from a judgment for $2,000.00 in favor of appellee for personal injuries sustained by being thrown from a wagon, as a result of the animal drawing the wagon, becoming frightened at one of appellant's trains and running away.

The injury occurred at a public crossing some distance east of the town of Whitesburg. The county road runs in an easterly direction and crosses the railway tracks at right angles; to the east of the railway the road forks, the left fork going east and the right curving and running south very nearly parallel with the railway tracks; at different points it being from 18 to 32 feet from the center of the railroad track to the center of the road. The east and south forks of the road do not make an acute angle but bend around a short curve just opposite the crossing. At the time of the injury there was a telephone pole on the inside of this curve on the eastern edge of the road, the distance from this post to the center of the intersection of the railroad crossing being 38 feet, so that one traveling the county road and not intending to cross the railroad was required at this point to make a very short turn in close proximity to the railway tracks.

On the morning of the injury the plaintiff and her husband were riding in a vehicle drawn by a mule. According to her evidence the husband was making some purchases in a store which was situated on the east side of the county road 216 feet south of the center of the in-

tersection. She was on the wagon at the time holding her baby in her arms. They knew of the proximity of the road to the railway and before her husband got in the wagon, listened for signals, with the intention of getting out in the event a train was approaching. Not hearing any signals or having any other notice of the train's approach they started up the road to the north, not with the intention of crossing the tracks, but intending to drive to the right at the curve of the road, and go eastward to their home.

About half way to the crossing they were met by a train which had approached without any signals and their mule was frightened and ran away; that as it reached the crossing its fright was accentuated by the railroad employees undertaking to place upon the track a hand car which had been set aside to permit the train to pass; that by reason of this additional fright the mule swerved to the right of the road and the wagon struck the telephone pole throwing the plaintiff and her child out. She received painful but not serious injuries, was carried to her home and confined in bed for two or three weeks, but it seems has fully recovered.

These facts were pleaded and proven by plaintiff. It is admitted that section 786 of the Kentucky Statutes, which requires signals to be given by employees in charge of railway trains on approaching public crossings, is primarily intended for travellers using or intending to use the crossings and that as to trespassers upon the tracks or elsewhere the company owes no duty, and if such are injured they cannot complain that no signals were given; but it is urged that the statute is sufficiently comprehensive to include travellers in the lawful use of the highway at or near a crossing, whether intending to use the crossing or not. The argument is that the privilege of running dangerous instrumentalities over the public highways of the commonwealth carries with it the correlative duty of safeguarding the rights of those in the lawful use of the highways; that such instrumentalities are *per se* dangerous to those using the crossing, and as they are also calculated to frighten animals upon the public highway near the crossing, a traveller thereon has a right to be informed of the approach of the train so that he may dismount, or otherwise guard against danger; that therefore those in charge of the trains are required by the legislative act to give signals of the train's approach to the crossing and that upon their failure to do so the

company is deemed guilty of a misdemeanor and "also made liable in damages for any injury occasioned by such failure or violation." That a traveler upon the public highway riding or driving a wild or restive animal has a right to rely upon the train employees obeying the law of the land, and if in the absence of signals the train runs by him at such points and frightens his animal and thereby injures him the company is liable, where it is shown that he would have taken other precautions if the signals had been given.

Such is the law in reference to travellers using or about to use the crossing. Conway v. L. & N. R. R. Co. 135 Ky. 229; Rupard, etc. v. C. & O. R. R. Co., 88 Ky. 280; Chesapeake & O. R. R. Co. v. Ogles, 24 Rep. 2160; I. C. R. R. Co. v. Mizell, 100 Ky. 235.

While the character of signals is not prescribed, it is the duty of railway companies operating trains in incorporated towns and cities to signal the approach of the trains to their stations and tracks near which the presence of teams is to be anticipated, and a driver is not required to be at a crossing to be entitled thereto. L. & N. R. R. Co. v. Penrod, 108 Ky. 172. However, in that case it was especially stated that the rule did not apply to country crossings. This statement was dicta, but the question was directly raised in C. N. O. & T. P. Ry. Co. v. Harrod's Admr., 132 Ky. 445.

The defendant used the tracks of the Southern Railway. Harrod, an employee of the Southern and while rightfully at work upon its tracks in making certain switches in the city of Georgetown, was run over and killed by a C. N. O. & T. P. train running behind time and travelling at a rapid rate. There was a country road crossing 1,100 feet away and there was proof that the train gave no signals as it approached this crossing.

In reference to this the court said:

"The public policy has been and is to require railroad companies to give certain warning signals at the highway crossings. Why? In order to apprise travellers upon the highways about to use the crossing that the railroad train was approaching and about to pass over it, so that the former might, as they probably could, by stopping their vehicles keep out of the way of the train, or, if pedestrians, keep off the track while the train was passing. As trains running at a high rate of speed cannot stop so easily,

and cannot turn out of the way at all, the warning is to the users of the highway, so that the train can have a clear and unobstructed passage over the crossing. This warning then is not for the benefit of those on the train or elsewhere than at the railway highway crossing. . . . The failure to whistle for the crossing may have been negligence as to those of the public using the crossing, but for workmen about the yards half a mile away, though they may have come very naturally to rely upon it, it was not a duty owing to them, and its omission was not therefore negligence as to them."

It might be said that two travellers riding restive animals, one intending to use the crossing and the other to turn to the right, might in approaching this crossing under otherwise exactly similar circumstances have their animals frightened and both receive injuries, and that it would seem inconsistent to allow a recovery to one and refuse it to the other. But the same question would have been presented, if through failure to give signals a traveller using the Scotts crossing had been injured by the same train that killed Harrod, in the case, *supra*. Harrod was not a trespasser; he was within 1,100 feet of the crossing, close enough for signals to be heard, but the company was under no duty to give signals at the road crossing to warn him of its approach to his place of work. To extend such duty to persons not using the crossing would include all travellers using parallel highways for an indefinite distance from the crossing and workmen in fields adjacent thereto, and possibly others in the vicinity might claim that their business affairs were regulated on the basis of the law being complied with in the giving of such signals.

Certainly such was not the intendment of the law, which permits the two classes of highways to parallel each other, and does not require a lookout or signal duty for the benefit of travellers upon the parallel highway when approaching places where the highways are in close proximity except in cases of discovered peril. The fact that the closeness of the highway is near a public crossing does not change the duty of the railway employees in this respect. Confusion has probably arisen from the fact that we have held that one about to use a crossing may give evidence of his intentions, and as to what course he would have taken if the signals had been

given.   Conway v. L. & N. R. Co., *supra*, and upon this ground travellers not about to use the crossing undertake to create a liability by showing how they intended to use the highway if signals had been given.   The propriety of this rule of evidence has been questioned even as applied to those about to use the crossing, but passing this it should not be extended so as to create a cause of action, which would not otherwise exist.

The principle laid down in the Harrod case appears decisive of the question raised in this one, and we perceive no reason for departing from it.   It follows that the court erred both in overruling a demurrer to the petition as amended and in failing to give a peremptory instruction to find for defendant.

Wherefore, judgment is reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting.