JENSON, Respondent, vs. THE CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Appellant.

*November 30 — December 29, 1893.*

*Railroads: Crossing above highway: Statutory regulations: Frightening horse on highway: Negligence: Speed of train: Instructions to jury: Damages.*

1.  The statutory regulations as to the rate of speed of trains and the giving of signals at or near highway crossings apply only to grade crossings.
2.  In an action for injuries sustained by reason of a horse being frightened by a train which was running about fifteen miles an hour over a crossing above a highway, it was error to charge the jury that they should take into consideration the rate of speed of the train, and that it was negligence not to have rung the bell or blown the whistle.
3.  In an action for personal injuries it was error to instruct the jury that they might allow reasonable compensation for the *inconvenience* as well as for the injury suffered by the plaintiff.

APPEAL from the Circuit Court for *St. Croix* County. Action to recover damages for personal injuries alleged

to have been caused by the negligence of defendant and its servants. The facts are stated in the opinion.

*Solon L. Perrin,* for the appellant, argued, among other things, that the injury was not shown to be the natural and probable result of any negligent act or omission on the part of defendant, and that plaintiff, not having stopped and listened for the train, was guilty of contributory negligence. *Seefeld v. C., M. & St. P. R. Co.* 70 Wis. 216; *Schmolze v. C., M. & St. P. R. Co.* 83 id. 659, 667; *Butterfield v. Western R. Corp.* 10 Allen, 532; *Schofield v. C., M. & St. P. R. Co.* 114 U. S. 615; *Favor v. B. & L. R. Corp.* 114 Mass. 350; *Rheiner v. C., St. P., M. & O. R. Co.* 36 Minn. 170.

*A. J. Kinney,* for the respondent, contended, *inter alia,* that the crossing was an extremely dangerous one, and hence that the law required defendant's servants in charge of trains to approach it at a less rate of speed and use increased diligence in giving warning of their approach. *Continental Imp. Co. v. Stead,* 95 U. S. 161; *Winstanley v. C., M. & St. P. R. Co.* 72 Wis. 375; 1 Thomp. Neg. 422, sec. 5; *Roberts v. C. & N. W. R. Co.* 35 Wis. 679; *Guggenheim v. L. S. & M. S. R. Co.* 66 Mich. 150; *Voak v. N. C. R. Co.* 75 N. Y. 320; *Piper v. C., M. & St. P. R. Co.* 77 Wis. 247. Although the statute does not require a whistle to be blown for this crossing, yet in view of its character and the liability of an accident happening there the jury had a right to find that it was negligence on the part of defendant to omit such a signal. *Cordell v. N. Y. C. & H. R. R. Co.* 70 N. Y. 119; 1 Thomp. Neg. 419, sec. 4; *Winstanley v. C., M. & St. P. R. Co.* 72 Wis. 375; *Eilert v. G. B. & M. R. Co.* 48 id. 606; Rorer, Railroads, 1012–1014. The doctrine of *Favor v. B. & L. R. Corp.* 114 Mass. 350 (in which it was held that the Massachusetts statute did not require the whistle to be blown except where the highway was crossed at grade), was considered and exploded in

*Rupard v. C. & O. R. Co.* 88 Ky. 280. See, also, *Penn. R. Co. v. Barnett,* 59 Pa. St. 259, 263; *Wakefield v. C. & P. R. R. Co.* 37 Vt. 330; *Ransom v. C., St. P., M. & O. R. Co.* 62 Wis. 178, 184; 1 Thomp. Neg. 352, sec. 15; Id. 349, sec. 14; *Norton v. Eastern R. Co.* 113 Mass. 366. The running of the train, even at the statutory rate of fifteen miles an hour, might, under the circumstances, be negligence. *Winstanley v. C., M. & St. P. R. Co.* 72 Wis. 375; *Guggenheim v. L. S. & M. S. R. Co.* 66 Mich. 150; 1 Thomp. Neg. 418, sec. 2; *Linfield v. O. C. R. Corp.* 10 Cush. 562; *Richardson v. N. Y. C. R. Co.* 45 N. Y. 846.

ORTON, J. · The facts of this case are substantially as follows: In the city of Hudson, and near the northeastern limits thereof, there is a highway or wagon road (the name of which is not given) that starts at the intersection of St. Croix and Eleventh streets, and runs in a northeasterly direction in a descending grade and through a deep cut until it passes under the railroad or railroad bridge over the same, of the defendant, and then passes on and constitutes the main highway from the city to the North Wisconsin Junction. After it has passed under the railroad bridge, and about seventy-two feet from it, there had been a washout that tore out an old culvert, and made a gorge or gully about twenty feet deep in a part of the road, which left the track quite narrow. There was a fence along the edge of this gorge. On the 1st day of October, 1892, the plaintiff was traveling along this road from said junction towards the railroad bridge, with his wife, in a single carriage. When he was passing or had just passed under said bridge, a freight train of the defendant passed over said bridge, and the noise frightened the plaintiff's horse and he became unmanageable and ran and jumped over said fence into the said gorge, and of course turned over the carriage and threw the plaintiff and his wife out, but, strange to

Jenson vs. The Chicago, St. Paul, Minneapolis & Omaha R. Co.

say, with but slight injury to the plaintiff and no injury to his wife. It is difficult to say from the evidence whether the plaintiff was under the bridge when the train passed over it, or had passed beyond the bridge when the train passed over, for the plaintiff testified that he was going down the bank when he saw the engine, and that was over seventy feet from the bridge. It does not appear that this road was one of the streets of the city. It would appear to be a country highway leading to the city, for it seems to have no name or number. The train was running about fifteen miles per hour. There was no proof that the bell was rung· or the whistle blown before passing over the bridge.

The learned judge instructed the jury that the statute required the bell to be rung at and before crossing, and that they should take into consideration the rate of speed that the train was running, and that it was negligence not to have rung the bell or blown the whistle. The jury must have found the defendant guilty of negligence in one or, more of these particulars. The verdict for the plaintiff was $100. The court instructed the jury " that they could only allow the plaintiff a reasonable compensation for the *inconvenience* and injury he suffered from the causes named," and this was excepted to by the defendant's counsel.

It is a little remarkable that this case was tried both by the court and counsel precisely as if the accident had occurred at an ordinary railway crossing at grade with and intersecting a highway. The very best reason for constructing a railroad over or under a highway is to avoid the danger and hazards of such an ordinary grade crossing. Our statute (sec. 1837, R. S., and sec. 1299*c*, S. & B. Ann. Stats.) provides for constructing railways over bridges or arched culverts above highways. This bridge is presumed to have been constructed according to law. Such crossings are to be encouraged in order to secure the safety

and security of the public, as crossings at grade are always dangerous.   19 Am. & Eng. Ency. of Law, 868, 869; *Pittsburg & C. R. Co. v. S. P. R. Co.* 77 Pa. St. 173.   All the statutory regulations and liabilities on the subject of railroad crossings apply only to such as are constructed at even grade with the highway, and none of them are applicable to a crossing constructed above or below the highway. 4 Am. & Eng. Ency. of Law, 907; *People v. N. Y. C. & H. R. R. Co.* 74 N. Y. 302; *New York & N. E. R. Co. v. Waterbury,* 55 Conn. 19; *Central Vt. R. Co. v. Royalton,* 58 Vt. 234; *Clawson v. C. & G. S. R. Co.* 95 Ind. 152; *Whitcher v. Somerville,* 138 Mass. 454; *Pennsylvania R. Co.'s Appeal,* 116 Pa. St. 84.   Common reason teaches that this crossing is very different from the common railroad crossing at the grade of the highway, not only in fact but in all its incidents and relations to the traveling public. There is no danger at such a crossing of any collision of railroad trains or cars with man, beast, or vehicle on the highway.   It cannot be the direct cause of any physical injury to any person or thing ·on the highway.   The train passing over this bridge can cause no injury to persons or property on the highway other than, or different from, their injury while passing on a highway parallel to the railroad.

The only possible injury a railroad train can inflict upon persons or property in the highway is by frightening horses while drawing vehicles or being ridden, and causing them to run away and do damage, as in this case.   Only horses unused to such a place would be frightened, and only horses hard to hold or not well subdued would run away or get beyond the control of the driver; so that it is not common that any injury would happen even from this cause.   It is certainly no wrong for the train to be run over such bridges in the usual and ordinary way, and even in this way some horses going under the bridge, or being near it at the same

time, might be frightened by it. The trains must necessarily make considerable noise going over the bridge. They cannot be run without it. It is not by any means certain that a train would make less noise going over slowly than faster. What degree of noise must it make to frighten horses? A horse liable to be frightened would be by the train passing over the bridge at any rate of speed. There are too many contingencies, conditions, and uncertainties about it to make it a rule of law that a high rate of speed would be the proximate cause of an injury caused by a horse running away through fright from the noise of the train. To be a rule of law, the injury from such a cause must not only be proximate, but usual or common and to be expected, or that could be anticipated. There were probably a great many instances when horses passing under or near the bridge when a train was going over it were not caused to run away, or, if frightened at all by it, to such an extent. How could the company or its servants anticipate just when a horse would be frightened to such an extent, under such circumstances? This, so far as I know, is a new question, and I have said enough by the way of common reasoning, in the absence of authorities, to show that it would be an unsafe rule for the court to instruct the jury that they might consider the speed of the train, and find that its running at the rate of fifteen miles per hour was the proximate cause of the injury in this case.

We have seen that the statute as to the rate of speed of the train, and as to ringing the bell or blowing the whistle, has no application to such a crossing. All such regulations apply only to crossings on an even grade with the highway, and the rules of law established by the decisions of the courts are with reference only to such crossings. The danger from such bridges of frightening horses is no greater in fact, and no more common, than from the railroad running near and parallel to a highway. It would seem to be no

more reasonable to establish a rate of speed for the trains in passing such places in one case than in the other. This bridging over highways should be encouraged, not only for the safety of the public, but for the benefit of railroad companies themselves, and for their protection also. They should be no longer burdened, obstructed, or inconvenienced by the regulations and precautions applicable to grade crossings. If they are required to lessen their speed, to ring the bell and blow the whistle, and use all the precautions applicable to grade crossings, such expensive constructions in the interest of the public will be gratuitous, and they will not be encouraged to incur such an expense. As to ringing the bell and blowing the whistle, they are only required, if at all, in order to avoid frightening horses, and with that view to warn the traveler on the highway to stop. Where should he stop, and how near the bridge? If near the bridge, and his horse is liable to be frightened and run away, he will be in a much more dangerous condition than if he should drive on and take his chances; for the horse, facing the train rushing over the bridge, would turn suddenly around to escape danger, and upset the carriage. If he is to stop at a place further off, to look or listen for the train, then such a precaution would be useless, for the train is then so far off as to be out of sight or hearing. The sound of the bell or the whistle is only heard when the train is near a grade crossing, and it may well warn the traveler to stop near the track of the crossing, and be out of danger. Take this case as an illustration. The plaintiff was driving in a deep cut with high embankments. If, when he entered it, he had looked or listened, he could not have seen or heard anything of the train, for it was too far off. If he had stopped nearer the bridge, he could not have seen the train, nor could the trainmen have seen him. He could only expect the bell to be rung or the whistle blown when

Jenson vs. The Chicago, St. Paul, Minneapolis & Omaha R. Co.

he was very near the bridge. Then the noise of either would only have increased the noise of the train, and frightened the horse still more, and his only safe way would have been to drive on. The negligence of the company, to be culpable, must have caused or contributed to produce the injury. When was there any such negligence in this case? We cannot find from the evidence that there was any.

The jury followed the instructions of the court, and ignored the fact that this was not a grade crossing to which the statutory regulations applied, and found negligence only appropriate to such a crossing. It was clearly a mistrial, by the trial of issues not in the case. A railroad bridge crossing was made to bear all the legal tests of a grade crossing that intersects the highway. I am unable to suggest what regulations, if any, ought to be provided for such a crossing by the legislature. It is so much like a highway near and parallel to the railroad, on which horses may be frightened by the noise and seeing the train pass by, that I am unable to suggest any regulations which ought not to apply to one as well as the other. This plaintiff knew when he entered the deep cut leading to the bridge that he had a horse liable to be frightened and run away if he should be caught near or under the bridge when the train passed over it, and yet he drove on, thinking, as he said, that he might be there when the train passed. He knew when he entered the deep cut that the train was then too far away to be seen or heard, for he says he looked for a train and did not hear or see any; and yet he drove on, more and more out of sight of an approaching train, and when he could have heard the bell or whistle it was too late. His horse had jumped over the fence when he first saw the locomotive. He did not wait or stop to look or listen, but took his chances and drove on. I am not sure but that the company might make itself liable for blowing

Evans vs. The Chicago, St. Paul, Minneapolis & Omaha R. Co.

the whistle and ringing the bell so near such a bridge cross-
ing as to frighten teams passing under it on the highway.
But that is not this case.

It is not very important to notice one erroneous *word* in
the instructions of the court, where the whole general
charge was so clearly erroneous. The court instructed the
jury that they might allow a reasonable *compensation* to
the plaintiff for the *inconvenience* as well as for the injury
he suffered. The court might as well have told the jury to
make the plaintiff's verdict large enough to compensate him
for any disquiet, uneasiness, annoyance, or trouble he suf-
fered, for these are inconveniences according to Webster;
and they are not the subjects of compensation, although
they might be of exemplary damages. The misuse of this
word may have swelled the damages for this trifling injury
to $100. It was, therefore, an error.

This case is not important in amount, but it certainly is
important in the legal principles involved. Cases like this
are not common, and it is at least doubtful whether there
ought to be any like it.

*By the Court.*— The judgment of the circuit court is re-
versed, and the cause remanded for a new trial.