BOWEN *v.* GAINESVILLE, JEFFERSON & SOUTHERN R. R. CO.

Relatively to a traveler on a public road, driving an animal attached to a vehicle, and approaching a railroad crossing over which he is about to pass, the railroad company is under a duty to obey the requirements of section 708 of the code; and if, by reason of a failure to observe this duty, the locomotive comes within such close proximity to the animal that it takes fright, runs away, and injury results to the person in consequence of being thrown from the vehicle, the company is liable for such injury, although there was no actual contact between the locomotive and the vehicle or its occupant.

March 25, 1895. Brought forward from the last term. Code, §4271(a–c).

Action for damages. Before Judge SMITH. City court of Hall county. February term, 1894.

J. B. ESTES and F. M. JOHNSON, for plaintiff.
BRYAN CUMMING and PRIOR & THOMPSON, for defendant.

LUMPKIN, Justice.

The plaintiff's case was dismissed on the ground that the declaration did not set out a cause of action. It alleged, in substance: He was traveling on a public road which crosses the defendant's railroad, driving a mule which was unaccustomed to and afraid of engines and trains. The situation of the railroad track with reference to the public road was such as to prevent him from seeing or hearing the cars until he was on the track. He knew the railroad schedule, and that no train was then due or reasonably to be expected; but nevertheless, he exercised all reasonable precaution in looking and listening for a train. Not seeing nor hearing any, he drove on the track, when to his consternation he saw, not more than thirty to fifty steps distant, a train coming at the rate of fifteen or twenty miles an hour. It was an extra train, and not running on any schedule. He used every possible effort to free himself from his perilous situation, urging his mule forward as rapidly as he could. Just as the rear of his buggy cleared the track, the engine sped rapidly by and terribly frightened the mule, which rushed with the buggy against a tree on the railroad right of way, demolishing the vehicle and harness, injuring the animal, and throwing the plaintiff out and permanently injuring him—the nature of his injuries being described. The defendant's employees neglected to blow the whistle or to check the speed of the train in approaching the crossing. Had they observed the legal requirements in these respects, the plaintiff would have been warned, and would not have undertaken to cross the railroad until after the train had passed. Wherefore, the plaintiff averred that, being entirely free from fault his injuries were caused by the negligent failure of the defendant's employees to obey the law regulating the manner in which trains shall approach public crossings.

Section 708 of the code, which makes it the duty of a

locomotive engineer, when he shall arrive within four hundred yards of a road-crossing, "to blow the whistle of the locomotive until it arrives at the public road, and to simultaneously check and keep checking the speed thereof, so as to stop in time should any person or thing be crossing said track on said road," was designed to prevent injuries to person and property at road-crossings. In the case of *Atlanta & Charlotte Air Line Ry. Co.* v. *Gravitt*, 93 *Ga.* 369, 20 S. E. Rep. 550, we gave to this law deliberate and anxious consideration, and the writer endeavored to cite and discuss the previous decisions of this court in which this section had been construed. Our conclusion, after a careful review of the whole subject, was that a railroad company was not liable for injuries occurring between a blow-post and a crossing, when the only act which could be imputed to the company as negligence was the failure of the engineer to observe the requirements set forth in the above cited section of the code. But we did not hold, and so far as we are informed this court has never yet held, that a railroad company would not be liable for an injury occasioned to one who was exercising his right to approach and pass over a railroad at a crossing of the public highway over the same, when that injury was directly attributable to the failure of the engineer to obey the law laid down in that section. The statute embodied therein was, as we have already in substance remarked, enacted for the protection of travelers on public roads intending to cross railroads at points where these two kinds of roads intersect each other. It was therefore, relatively to the plaintiff, a duty of the company to obey this statute; and the declaration alleges that in this duty the company failed, and that but for such failure the plaintiff would not have been injured. The breach of the duty due to the plaintiff was negligence as to him, and for the consequences of that negligence,—assuming

as true all the allegations of the declaration,—the company is liable. It must be remembered that a traveler has as good a right to be upon a public crossing as the company has to run trains over it. When, therefore, a traveler is on his journey in the highway, intending to presently use such a crossing just ahead of him, a railroad company has no right, by a disobedience of law, to prevent him from using the crossing safely. The right to thus use it includes, not only the right to approach it for that purpose, but also the right to go upon and leave it without being hindered or put in danger by an unlawful act or omission on the part of the railroad company or its servants. We do not think the law was intended solely to prevent such injuries as might be caused by actual collisions upon the track itself, but also injuries resulting from animals taking fright and running away, when the act of crossing was about to begin, was in progress, or had just been completed. The General Assembly must have had in contemplation the prevention of all injuries which might thus be occasioned. It is important, just here, to bear in mind that the statute requires two distinct things to be done. One is, to check and keep checking the speed of the train, so as to stop in time should any person or thing be crossing the railroad; and the other is, to begin blowing the whistle four hundred yards from the crossing, and keep blowing it till the crossing is reached. The first of these requirements has been frequently construed to mean that the engineer must have his train under such control that he can bring it to a complete stop, if necessary to prevent a collision upon the track itself. If, therefore, no injuries were to be prevented save those only occasioned by collisions between the locomotive and persons or property upon the track, the requirement as to checking would be all sufficient; for if it should be strictly obeyed, a collision of any sort

on the crossing would be rendered impossible, and there would be no necessity whatever for any warning of the approach of the train by the blowing of the whistle. But the law distinctly says the whistle must be blown, commencing nearly a quarter of a mile from the crossing; so the question presents itself: Why should it be blown? The obvious answer is, that at least one purpose must be to give warning to persons riding or driving along the public road and approaching the crossing, in order that they may get their animals under control, watch them carefully, or, if liable to become frightened by the locomotive and consequently to do mischief, to keep them at a safe distance until the train has passed. This was precisely the warning,—and for the purpose just indicated,—which the plaintiff in the present case needed and was entitled to have. If the allegations of his declaration are true, his injury was directly attributable to the fact that such warning was not given. It is true he was not hurt upon the track, but was thrown out of his buggy because of the fright of his mule, produced by the close and terror-giving proximity of the locomotive. This, however, would not have occurred if the plaintiff, being warned in time, had kept at a safe distance from the railroad until the train had passed on its way. We therefore do not think the negligence of the engineer can fairly be claimed to be only the remote cause of the injury. On the contrary, we think it was sufficiently the proximate cause to give the plaintiff a right of action.

Upon a former occasion, we investigated at some length various questions as to the rights of travelers upon public roads in connection with the duty imposed upon railroad companies to signal the approach of trains to crossings. We found that in most of the cases bearing upon the subject, it was held that persons using the highway and approaching railroad crossings, intend-

ing to cross, were entitled to the protection afforded by statutes requiring signals to be given. We also found many cases holding that persons using a public highway in the vicinity of a railroad were entitled to this protection, even though not intending to cross; and still other decisions making the question of the company's liability depend upon whether or not there was an intention to cross. It is unnecessary now to examine very closely into these decisions or the reasons upon which they are based. In view of the dual requirement of our own statute, above pointed out, we have little difficulty in reaching the conclusion that the plaintiff below, under the facts he alleged, came fully within its protection.                                    *Judgment reversed.*