THE ST. LOUIS & SAN FRANCISCO RAILROAD COM-
PANY V. M. H. MORRISON.

No. 14,522.    (85 Pac. 295.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Frightening Team—Omission to Give a Signal.*
Assuming that where a private road crosses a railroad-track
by means of a subway the situation is such as to authorize
a court to submit to a jury the question whether the railroad
company owes to one about to use or actually using such
crossing a duty to give warning of the approach of a train,
the omission to give such warning cannot be made the basis
of a recovery for injuries received in a runaway by one whose
horse is frightened by a passing train after he has driven
through the subway and is traveling upon a road parallel
with the track, although he is but fifty feet from the crossing.

2. ——— *Place of Peculiar Danger — No Duty to Sound a
Whistle.* In the case stated in the foregoing paragraph the
non-liability of the company is not affected by the further
fact that the place where the plaintiff's horse was frightened
was rendered one of peculiar danger because the road was
there confined in a narrow lane by a barbed-wire fence paral-
leling the railroad.

Error from Butler district court; GRANVILLE P.
AIKMAN, judge. Opinion filed March 10, 1906. Re-
versed.

*L. F. Parker,* and *W. F. Evans,* for plaintiff in error.

*T. A. Kramer,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: A horse which M. H. Morrison was
driving became frightened at a passing train of the
St. Louis & San Francisco Railroad Company and ran
away. Mr. Morrison was thrown out of his buggy and
seriously injured. He sued the railroad company, and
recovered a judgment for $1925, from which the de-
fendant prosecutes error. The only question necessary
to be considered is whether there was any evidence
tending to show that the injury was the result of the

breach of any duty which the company owed to the plaintiff.

In the vicinity of the place where the injury occurred the railroad-track runs north and south, and crosses a small stream known as the south branch of Hickory creek. Two wagon roads on the east side of the railroad, one coming from the north, the other from the southeast, unite at this point, and, paralleling the bed of the stream, pass under the railroad-track and immediately turn south. These roads are not highways, but they have long been used by the owner of the land, his neighbors and others to such an extent that ruts have been worn, rendering them plainly visible. The railroad-track south of the creek is straight for some sixty or seventy rods, and then turns and is hidden from sight by trees and bluffs. At the creek the wagon roads descend somewhat sharply to pass under the track, and from the low ground the view is cut off within fifty feet or so by the trees and the higher ground. On the west side of the railroad the wagon road runs south through a narrow lane, enclosed between the railroad on the one side and a barbed-wire fence on the other. These conditions have existed for many years.

On the day of the accident the plaintiff had business which rendered it desirable for him to make use of the crossing described. He drove toward it upon the road that comes up from the southeast. As he neared the railroad-track he listened for a train, and looked down the track as far south as it was visible. Not seeing or hearing anything to indicate the approach of a train, he drove under the track and turned south. He had just reached the high ground and entered the lane already described, and was pursuing his course south, being some fifty or sixty feet from the crossing, when a train going north passed him, frightening his horse and occasioning the injuries for which he asked damages. No whistle was blown or bell sounded as the train approached the crossing. The contention of the

Railroad Co. v. Morrison.

plaintiff is that the jury were warranted in concluding that the situation and surroundings of this crossing imposed a duty upon the company to have a signal given whenever a train approached it, and that the omission to give such a signal in this case was an act of negligence toward the plaintiff which caused his injury. The soundness of this contention constitutes the whole subject of inquiry. It is not claimed that any of the train crew knew of the situation of the plaintiff, but that they were chargeable with notice of the existence of the roads and were bound to assume that there might be travelers at the crossing.

It is substantially conceded that the road was not of such a character as to be within the terms of the statute (Gen. Stat. 1901, § 1323) requiring a whistle to be sounded upon the approach of a locomotive to a public crossing. But it is insisted that, inasmuch as this crossing was so situated that one about to use it could not see far enough down the track to give him adequate warning of the coming of a train, the case falls within the rule stated in *Roach v. St. J. & I. Rld. Co.,* 55 Kan. 654, 41 Pac. 964, where it was held that whether it is negligence for an engineer to omit to give a signal near a private crossing is or may be a question for the determination of a jury. Whether this rule should ever be applied to any crossing except where the wagon road and railroad-track are upon the same grade is a question upon which the authorities differ. In Massachusetts it is held that it should not, but in Pennsylvania and Kentucky the decisions are to the contrary. (See *Favor v. Boston & Lowell Railroad Corporation,* 114 Mass. 350, 19 Am. Rep. 364; *Pennsylvania Railroad Co. v. Barnett,* 59 Pa. St. 259, 98 Am. Dec. 346; *Rupard, &c., v. Chesapeake & Ohio Railroad Company,* 88 Ky. 280, 11 S. W. 70, 7 L. R. A. 316.) In Wisconsin and in Georgia it is held that statutes requiring a whistle to be sounded whenever a locomotive approaches a public crossing have no application to any but grade crossings, for the reason that only in

such cases is there any common use of the highway, or possibility of actual collision, although in both states it is recognized that the frightening of horses is one of the dangers intended to be guarded against by such statutes. (See *Jenson v. The Chicago, St. Paul, Minneapolis & Omaha R. Co.*, 86 Wis. 589, 57 N. W. 359, 22 L. R. A. 680; *McElroy v. Ga., C. & N. Railway Co.*, 98 Ga. 257, 25 S. E. 439; *Ransom v. The Chicago, St. Paul, Minneapolis & Omaha R'y Co.*, 62 Wis. 178, 22 N. W. 147, 51 Am. Rep. 718; *Bowen v. Gainesville R. R. Co.*, 95 Ga. 688, 22 S. E. 695. See, also, in this connection, *Skinner v. New York O. & W. R. Co.*, 64 N. Y. Supp. 325.)

Whether the railroad company may be held in any case to owe a duty to one who is using or is about to use a private subway under its track to give timely notice of the approach of a train need not now be determined, as we conclude that however that question might be decided no liability against the defendant is shown in this case, for the reason that at the time of the injury the plaintiff had crossed under the railroad-track and was traveling upon a road parallel to it.

It is true that under statutes requiring signals to be given upon the approach of a train to a public crossing it has been held, although there is some conflict in the decisions, that the railroad company owes the duty to give such warning, not only to persons about to use or actually using the crossing, but also to those traveling upon the highway in the vicinity. But in these cases the liability of the railroad is based upon the very terms of the statute, the theory adopted being that the violation of a positive duty enjoined by the legislature gives a cause of action to any one who suffers injury by reason of such violation and whose protection may reasonably be supposed to have been to any extent within the legislative contemplation. It is not to be inferred from these decisions that in the absence of a statute, or in the case of a private crossing, to which the statute does not apply, the same doctrine

Railroad Co. v. Morrison.

would justify a court or jury in awarding damages to one whose horse was frightened by a train elsewhere than at a crossing.

In the present case any duty that the railroad company may have owed the plaintiff did not arise from the fact that he was using a road which approached near to the track, but from his use of a road which actually crossed it, although at a different grade. It is obvious that where a highway lies near to a railroad there is some danger of accidents resulting from horses being frightened by passing trains, and that this danger would be less if timely notice should be given of their approach. But so far as we are aware it has never been contended on this account that there was an obligation on the part of those operating trains to give any signal upon approaching a place where the highway and railroad-track come close together without crossing. Where the road and track lie parallel for a considerable distance this would be impracticable, as involving a continuous sounding of the whistle or ringing of the bell. This consideration does not constitute the reason for not exacting such a requirement, however. It could indeed have little application where a highway comes up to the railroad and then turns sharply away. In such a situation there might be sufficient reason for giving a signal to justify legislation compelling it, but to demand it in the absence of such an enactment would be to require too close a balancing of probabilities on the part of the employee in charge of the engine. The very sounding of the whistle involves an appreciable addition to the risk of frightening horses. The law reports show that claims against railroad companies for causing runaways by the giving of signals, if not as common as those based upon an omission to give them, are far from infrequent.

It may be that the risk of an injury resulting from the horse of a traveler being frightened by a train while actually using the crossing under the track was

so great that as against that risk a jury might well say that it was incumbent upon the agents of the railroad company to give a signal of the approach of a train. If so the duty resulted from the special danger at that very place, and not from the general danger involved in the proximity of the wagon road to the railroad-track. The plaintiff, not having been injured by the only peril against which it could have been the duty of the trainmen to protect him by the giving of a warning, had no ground of recovery against the company.

In the argument some stress was laid upon the fact that the place where the plaintiff's horse took fright was rendered one of peculiar danger by reason of the road's being confined to such narrow limits by the barbed-wire fence. This was not a condition for which the defendant was in any way responsible. If such a condition existed elsewhere than near the crossing it would not impose a duty to signal upon the approach of a train. It had no necessary connection with the crossing—its existence in proximity thereto was purely incidental. The special and peculiar danger resulting from the placing of a fence outside of the road so near the track was not one of which the railroad company was required to take notice and against which it could be required to guard by the giving of signals with reference thereto.

For the reasons stated the judgment is reversed, and the cause remanded for further proceedings in accordance herewith.

All the Justices concurring.