ELLEN BELLE MILLER, By next Friend, ANNIE S. CARPENTER, Respondent, v. C. J. ENGLE and CHICAGO, ROCK ISLAND & PACIFIC RAILWAY CO., Appellants.

Kansas City Court of Appeals, January 11, 1915.

1. NEGLIGENCE: Violation of City Ordinance: Damages: Railroads: Overhead Crossings: Duty to Signal Approach of Trains to. A girl driving a single buggy approached an overhead railroad crossing within the city limits. At a point eighty-three steps back from the crossing the railroad track could be seen for a long distance but after leaving that point the only way to learn of a train's approach was to listen. Plaintiff stopped at the point where the railroad could be seen and looked along the track for a train but none was in sight. She then drove on to the crossing listening for a train but hearing none. The highway passed under the railroad bridge by a steep descent and the bridge was about twenty-five feet above the ground. There was an ordinance of the city requiring the bell to be rung continuously within the city limits and another ordinance forbidding the blowing of the whistle therein except in immediate danger. As plaintiff was emerging from under the bridge a train going thirty-five miles per hour passed over the bridge, the engine emitting several successive, sharp, shrill whistles. Plaintiff's horse became frightened and ran away crippling plaintiff for life. There was evidence tending to show that

the bell was not rung and that there were no circumstances of danger or apparent danger calling for the blowing of the whistle. The case was submitted to the jury upon the questions of the negligent failure to ring the bell, the negligent blowing of the whistle, and whether they or either of them proximately caused the injury. *Held* that if the ordinances, or either of them, were violated the defendants were guilty of negligence *per se,* and that whether they or either of them were violated, and whether such violations or either of them proximately caused the injury was for the jury to determine, and that the appellate court could not say as a matter of law that there was no causal connection between the failure to ring the bell and the fright of plaintiff's horse and her consequent injury.

2. ——————: ——————: ——————: ——————: ——————: ——————: **Frightening Horse: Liability.** As the ordinance required the bell to be rung continuously this applied to all crossings whether over, under, or on a level with the highway. The object of providing for a signal was not only to enable travelers to avoid danger from collision, but also from frightening their horses and to enable such travelers to take due precautions for their own safety.

3. ——————: ——————: ——————: ——————: ——————: ——————: ——————: **Unnecessary Whistling.** A railroad is liable for the negligent frightening of a traveler's horse by making unnecessary use of the whistle or creating other unnecessary noises. Hence, the use of the whistle when there were no circumstances calling or reasonably appearing to call for it to avoid immediate danger, was negligence for which defendants would be liable if they caused, or joined in causing, plaintiff's injury.

4. **PLEADING: Petition.** Where the petition alleged facts showing the situation and all the surroundings and what plaintiff did, what the defendant negligently failed to do and that those things caused her injury, from which it appeared as a necessary inference that plaintiff was led by the failure of the defendants to ring the bell to put herself in a perilous position, this was sufficient as a matter of pleading to entitle her to submit the case on the failure to ring the bell as one of the grounds of negligence, especially where there was no attack upon the petition until in the appellate court.

5. **INSTRUCTIONS.** Instructions, requiring the jury to find for defendants, are erroneous if they omit any element of fact or right in plaintiff's favor, or which was proper to be considered in passing on the questions submitted in the instructions.

6. ——————: **Submitting Question of Law.** An instruction submitting an abstract proposition which, when applied to the facts,

leaves a question of law to the jury, is erroneous and is properly refused.

7. **PRACTICE TRIAL: Pleading: Contributory Negligence.** Although the answer charges negligence on the part of plaintiff in such a way as to be insufficient to plead contributory negligence and amounts only to a denial of the plaintiff's cause of action, yet, where both sides submitted the question of contributory negligence, the case will be treated in the appellate court as if that issue had been properly raised.

8. ———: **Facts Occurring at Trial, How Shown.** The only way to preserve a point on improper argument is to object to such argument and except when the objection is overruled and preserve the occurrence, the objection and the exception in the bill of exceptions as well as claim the error as a ground for new trial in the motion therefor.. All must appear in the record. An affidavit attached to the motion for new trial stating that an improper argument was made and objected to is no proof thereof.

9. ———: **Calling New Juror.** After the trial had commenced it was discovered that one of the jurors was deaf, and the court offered the parties the choice of calling a new panel or a new juror, of which neither side availed themselves. Whereupon, the court called a new juror who, after being examined on *voir dire*, was accepted by both sides. The jury, with the new juror therein, was resworn and the trial began again as if it had never commenced. *Held*, no error was committed.

Appeal from Buchanan Circuit Court.—*Hon. C. H. Mayer*, Judge.

AFFIRMED.

*John E. Dolman* and *O. E. Shultz* for appellants.

*Stigall & Otis* for respondent.

TRIMBLE, J.—Plaintiff, driving in a one-horse buggy, passed under an overhead railroad crossing. Just as she was emerging therefrom, a train ran over the crossing and her horse became frightened and ran away, throwing her out and crippling her for life. She brought this suit for damages alleging that the fright

of the horse and resulting injury to her were caused by negligence of the defendants, the engineer and the railroad in charge of and operating the train.

The crossing was inside the city limits of St. Joseph. The surroundings at the scene of the injury are well described in the petition. It charged that plaintiff was driving east in a public highway which was an extension of Commercial street, and upon this highway was constantly a large amount of travel; that said highway "extended east from the end of the South Park car line in said city along the north side of and closely parallel to defendant's track for the distance of one-half mile, thence sharply south, passing beneath defendant's track, which is sustained at that point by an overhead bridge, thence east again along the south side of and cloesly parallel to the defendant's track, to the city limits;" that in going east along the highway on the north side of the track, and when plaintiff reached the crest of a hill about eighty-three steps west of the crossing, she looked east along the track and saw it was clear; that after passing the crest of the hill it was no longer possible to see east along the track because of a clump of trees in the right of way east of the crossing and north of the track; that before passing under the track she listened to learn of a train's approach but heard no bell nor other signal of an approaching train; that, hearing none, plaintiff turned south and passed beneath the bridge or crossing, and just as she emerged on the south side and was about twenty-five feet from the bridge and before reaching the point where the road turns east again, a westbound passenger train reached said bridge.

The petition then charged: *First,* that the defendants negligently ran the train at thirty-five miles per hour in violation of an ordinance of said city which prohibited the running of an engine or train within said city at a greater speed than five miles per

185MoApp36

hour; *second,* that the defendants negligently and carelessly omitted to give any warning of the train's approach to the crossing and negligently failed to ring any bell, in violation of an ordinance of said city which provided that "the bell of each locomotive engine shall be rung continuously within said city;" *third,* that when said train reached said overhead bridge, defendants negligently sounded the whistle "unnecessarily, repeatedly, and with unnecessary, unusual, and deafening shrillness," that defendants "unnecessarily sounded said whistle, well knowing, or when, by the use of ordinary care, they could have known, that said sounding of the whistle would frighten and terrify the horse which plaintiff was driving," and that defendants "saw, or by the use of ordinary care could have seen, that plaintiff's horse was being frightened by said whistle and was becoming unmanageable, but that well knowing these facts they continued said unnecessary and careless sounding of the whistle," all of which was in violation of an ordinance of said city forbidding "the blowing of steam whistles on railroad locomotives within the city limits, except in cases of immediate danger."

The petition then alleged that "on account of the aforesaid negligent acts the horse which she was driving became frightened and unmanageable; that it overturned the buggy in which she was driving, throwing her out and violently to the ground, seriously injuring her, etc."

Defendants demurred to the evidence, but this was overruled.

Plaintiff's instructions submitted the case to the jury upon the last two alleged acts of negligence, namely, the failure to ring the bell or give warning of the train's approach to the crossing, and the negligent sounding of the whistle on reaching the bridge. The jury returned a verdict in favor of plaintiff for $3500 and defendants have appealed.

It will be observed that both of these grounds charge defendants with the neglect of a statutory duty, i. e., the violation of an ordinance in not ringing the bell and also the violation of an ordinance in blowing the whistle when it was unnecessary. Hence we are not confronted with the question of whether or not the two grounds can be joined in the same count of the petition. And, so far as the failure to ring the bell is concerned, we are not concerned with the question whether, under the circumstances, it was negligent not to ring it, since a violation of the ordinance in reference thereto is negligence *per se*. [Jackson v. Kansas City etc. R. Co., 157 Mo. 621; Murray v. Missouri Pac. R. Co., 101 Mo. 236.] The blowing of the whistle was likewise negligence *per se* unless there were circumstances which required, or seemed to require, that it should be blown to obviate danger. If there were no circumstances of danger, or apparent danger, calling for the blowing of the whistle, then we are not concerned with the question whether the omission to ring the bell or the blowing of the whistle were made acts of negligence by reason of the nature of the crossing and the surroundings thereof—the ordinances have settled that question for us by making them negligence in and of themselves. Of course, even if the defendants were guilty of negligence *per se* in the manner specified, this would not entitle plaintiff to recover unless at least one, or both, of such negligent acts proximately caused the injury; and if only one of them proximately caused the injury; then plaintiff can recover only upon that one.

With regard to the ground of negligence contained in the alleged failure to ring the bell, it would seem that the question whether such failure proximately caused the injury is one that is more important rather than whether or not the defendant railroad is required to signal the approach of its trains to a crossing which is not on the grade of the highway. The

ordinance requires the bell to be rung continuously within the city limits, so that the bell should have been rung as it approached this crossing whether it was on, above, or below the grade of the highway. If defendants' liability for failure to ring the bell depends solely upon the question whether or not such failure was the proximate cause of the injury, then the further question would arise whether the appellate court could say, as a matter of law, that it did not proximately cause it. For us to say that, is to hold that a position under, or very nearly under, an overhead railroad bridge is no more dangerous or likely to scare a horse than if he were a further distance away and the train was on the ground and level with him. It would seem that all would agree that a horse would be much more likely to scare at a ponderous engine rushing swiftly and without warning over his head than he would if the engine were on the ground. "It is well known that a horse is more likely to scare at a sound made over his head than when the same sound is made on the ground." [Rupard v. Chesapeake & Ohio R. Co., 88 Ky. 280, l. c. 284.] Even a human being under a railroad bridge when a train thunders over it, will instinctively seek a place of greater security elsewhere, and if this feeling exists in the human breast what must the effect of such an experience be upon the mind of an animal? If now the failure to ring the bell, and thus give notice of the train's approach to the crossing led plaintiff to go into a more dangerous situation than she otherwise would have been, we do not have the power to declare, as a matter of law, that such failure was not the proximate cause of the injury. Again, the danger of plaintiff's situation would arise not only because her horse was so nearly under the bridge as to greatly increase the chances of it being frightened, but also from the fact that the want of notice of the train's approach to which she was entitled under the ordinance, resulted in the train catch-

ing her unawares and depriving her of the opportunity of taking precautions to insure her safety. The question whether the failure to ring the bell induced plaintiff to go under the bridge at the time she did was for the jury to determine. So also was the question whether a position under, or very nearly under, the bridge was more dangerous than where she would otherwise have been. [St. Louis etc. R. Co. v. Boback, 71 Ark. 427.] Consequently, the question of whether the failure to ring the bell was a proximate cause of plaintiff's injury was for the jury to settle under all the evidence. The testimony was that after leaving the crest of the hill and for some distance before the crossing was reached, the trees on the right of way prevented plaintiff from seeing the train, so that she had to depend upon her sense of hearing to learn whether the train was coming, that as she travelled this distance she listened but heard no train, of which the bell, if it had been rung, would have warned her. And as the passageway under the crossing was a steep descent with banks on either side, the danger of her horse being frightened by a train passing suddenly and unexpectedly above the animal's head was much greater than if she were not under, or practically under, the bridge. It is said that it is purely conjectural to say that the horse would scare when under the bridge but would not do so when stopped further back on the highway. We do not think so. Plaintiff's evidence was that the horse was a very gentle horse. And as shown above, the crossing was a place of danger, and there was much greater liklihood of the horse scaring there than if he had been a distance away and could not only see what it was that was passing, but also know that there was no danger of its coming upon him. It seems to us that in order to say, as matter of law, that the failure to ring the bell had nothing to do with the fright of the horse, we must declare that the horse would not be more likely to scare under the bridge, al-

though the inferences are all to the contrary, and we must also conjecture that he would have scared anyway had plaintiff known of the train's approach and stopped before the bridge was reached. We are not permitted to conjecture either way, and the mere statement of the foregoing circumstances shows the entire question to be one peculiarly for the jury to determine. Besides, as said above, notice of the train's approach would have enabled plaintiff to prepare for and meet the danger of a runaway if there was such danger at a place other than under the bridge.

It is contended, however, that there is no liability for failure to ring the bell in this case, because the ordinance is intended only for the protection of persons at grade crossings and street intersections. If this be true why did not the ordinance say so? And why require the bell to be rung "continuously?" This, as said before, would require it to be rung as the train approached all crossings whether on grade or otherwise. The question of the liability of a railroad for failure of its train to signal its approach to a crossing not on grade is one upon which the courts are not agreed. In Louisville & N. R. Co. v. Sawyer, 86 S. W. 386, the Supreme Court of Tennessee held that while there was no absolute duty, either at common law or by statute, resting upon a railroad to signal the approach of its trains to an overhead bridge crossing a highway, yet, if the place was dangerous, the signals must be given; and whether the place, as a matter of fact, is dangerous should be left to the jury to determine. In that case, the petition did not rely upon a statute but based the right to recover upon the contention that there was a common law duty resting upon the railroad to signal the approach of its train to such a crossing. In Rupard v. Chesapeake & Ohio R. Co., 88 Ky. 280, it was held that where a railroad crosses a public highway on a trestle, and there is danger of catching a traveler thereunder unawares and

frightening his horse, it is the duty of the railroad to give some timely warning of the approach of its trains to the crossing. It was also held that the question whether the failure to give such warning was negligence should be left to the jury. But in that case no reference is made to an ordinance or statute requiring such signal as in the case at bar. In Johnson v. Southern Pacific R. Co., 147 Cal. 624, it is held that the duty rests upon those in charge of a train to signal its approach to an overhead crossing the same as to crossings on grade. This was in construing a statute requiring a bell to be rung or whistle sounded at least eighty rods from the place where the railroad crosses any street, road, or public highway'' which is the same as our State statute on the subject, section 3140 Revised Statutes 1909.

In People v. New York Central R. Co., 13 N. Y. 78, under a statute expressed in the same words, it was held that a railroad was required to ring the bell or sound the whistle when its trains crossed a public highway although the highway and railroad did not cross each other on the same level.

In Pennsylvania R. Co. v. Barnett, 59 Pa. St. 259, it was held that where danger is likely to result to persons travelling on a public road that crosses a railroad, whether at grade, or under, or over the railroad, it is the railroad's duty to give notice of the approach thereto of its trains. It was also observed therein that if it would have been negligence in the traveler to pass under or above the track just as the train was about to pass, had he been aware of its approach, he was entitled to notice, and it was the duty of the company to give it. This is pertinent to the case at bar, since one of the theories on which the case was submitted was that plaintiff was guilty of contributory negligence in going under the bridge at the time she did.

In Cincinnatti et al. R. Co. v. Gaines, 104 Ind. 526, it was held that it was the duty of those operating a train approaching an overhead crossing to give timely warning of its approach, and that the second paragraph of the petition, alleging a failure to give such warning whereby plaintiff's team was frightened, stated a good cause of action. The court, however, held in the opinion on motion for rehearing that the statute was complied with and therefore no judgment could be based on that count of the petition.

In Whitney v. Maine Central R. Co., 69 Me. 208, it was held that the purpose of requiring signals to be given of the approach to a crossing is to enable travelers on the highway to not only escape collision, but also to stop at a safe distance from the crossing and avoid alarm to their horses. See also on this point Bowen v. Gainsville R. Co., 95 Ga. 688; Lonergan v. Illinois Central R. Co., 87 Iowa, 755; Norton v. Easter R. Co., 113 Mass. 366; Green v. Eastern R. Co. 52 Minn. 79; Gulf etc. R. Co. v. Breitling, 12 S. W. 1121.

In St. Louis etc. R. Co. v. Boback, 71 Ark. 427, 75 S. W. 473, it was held that this was the purpose of requiring signals at crossings. In that case the plaintiff was not injured by a collision but by her horse becoming frightened at the train as it passed closely behind her buggy. The court said the question for the jury to determine was not whether the horse became frightened at the failure to give the signals, but whether such failure led the plaintiff into a more dangerous situation than she would otherwise have been. This meant that it was not a question whether it was negligent to omit the signal but whether such omission was the proximate cause of the injury. So in the case at bar, the ordinance relieves plaintiff of showing that the omission to ring the bell was negligence but leaves to the jury the question whether such omission caused, or joined in causing, the fright of the horse and the consequent injury.

In Chesapeake & N. Ry. Co. v. Ogles, 73 S: W. 751, the Court of Appeals of Kentucky held, following the Rupard case, supra, that it was the duty of those in charge of a train approaching a highway over which the railroad crossed on a trestle, to give warning of its approach to such crossing and that a failure to give such warning, resulting in frightening plaintiff's team, and thereby injuring her, made the railroad liable.

Other courts, however, have held that a railroad is not required to give notice of its train's approach at other than grade crossings, but, while it is sometimes difficult to ascertain what the terms of the particular statute are, yet, in the far greater number of cases, such holding is in the construction of statutes whose terms are not so broad as to necessarily include all crossings of whatever character.

In Jenson v. Chicago, etc., R. Co., 86 Wis. 589, it was held that a railroad is not negligent in failing to signal its approach to an overhead crossing, but evidently, the statute requiring signals must have clearly applied only to grade crossings since the court says it it remarkable that the case should have been tried precisely as if the accident happened at a grade crossing, and plaintiff's brief in the case, at page 590, concedes that the statute did not require a signal for anything but a grade crossing.

In Favor v. Boston etc. R. Co., 114 Mass. 350, it was held that a railroad was not liable to a traveler in the highway for damages caused by the fright of his horse at a train passing over him on a bridge across the highway even though the railroad company knows that on account of the situation such accidents are peculiarly liable to happen there and although no signal of the train's approach is given. The court says the statutes prescribe certain signals at all crossings *at grade.* And in holding that failure to give the signals cannot become negligence by reason of the circum-

stances, no matter what they are, the court puts it on the ground that the railroad does not have any use of the highway in common withthe traveler. But, as said in Rupard v. Chesapeake, etc., R. Co., supra, the *use* of the road *is* in common with the traveler, and this common use is not destroyed by the fact that the track rests on a trestle which in turn rests on the highway over which the traveler has a right to pass, and if he did not have such right of passage he would be a trespasser by going under the railroad. The California case of Johnson v. Southern Pac. R. Co., 147 Cal. at page 632 also says the Massachusetts statute under which Favor v. Boston etc. R. Co. was decided, provides for signals "eighty rods from the place where the road crosses a highway . . . *upon the same level therewith.*" This, of course, makes the statute apply only to grade crossings because that is what it plainly says. The argument in both the Wisconsin and Massachusetts cases above cited concerning the difficulty of knowing whether a horse would be frightened because of his position under the bridge, while used to show that there could be no negligence in failing to signal, in reality goes to the question of whether the injury could be said to be the proximate result of the omission to signal, at least in cases where the statute or ordinance has made it negligent not to signal. And the statement that there is no difference between the liability for failure to give signals at overhead crossings and at places where the highway runs parallel to the track, is not true, since it is not necessary to place a highway parallel to a track, but it is absolutely necessary that it cross the same. Besides, as said before, it is common knowledge that a horse is more likely to become frightened at the sudden, unexpected and mighty rush and roar of a train immediately above his head than at the same train off a distance from him and on the ground where he is accustomed to see and know what is transpiring. As

said in the California case, (147 Cal. page 629): "The liability of horses to become frightened at sudden and unusual noises is matter of common knowledge, and while the giving of such signals may not remove all danger therefrom, yet when given at the proper time and place as provided by the statute, they at least tend to lessen the danger by putting the traveler approaching the crossing upon his guard, and giving him an opportunity to remain at a safe distance with his team, or to take such precautionary measures with reference to it as may be necessary for his and their safety."

The rule of the non-liability of a railroad for failing to signal its approach to a dangerous place in a road parallel to a track cannot be based properly or logically upon the ground that it is impossible to find a causal connection between the failure to signal and the fright and consequent injury. It properly rests and should be put upon the ground that a person riding on a parallel highway *is not within the protection of a statute requiring signals at crossing*s since such traveler is not intending or about to use a crossing. And this is the ground on which such rule of nonliability is based by the courts of Missouri. Such, for example, are the cases of Melton v. St. Louis etc. R. Co., 99 Mo. App. 282; Huff v. Mo. Pac. Ry. Co., 166 Mo. App. 632; Wheeler v. Wabash Ry Co., 159 Mo. App. 586. For this reason these cases cited by defendant are not applicable to the point in issue. Neither is the case of New York etc. R. Co. v. Martin, 72 N. E. 654, because in that case plaintiff was not intending to use the crossing and the court denied plaintiff a recovery upon that ground.

Another case holding that no liability can be predicated on a failure to signal at an overhead crossing is Blanchard v. Lake Shore etc. R. Co., 126 Ill. 416, but in that case the ruling is no more than a mere remark that the *statute* did not apply to such a crossing. The

court held that an *ordinance* requiring the bell to be "rung continuously" could not be relied upon because there was no allegation of such an ordinance in the petition, the implication being that it could have been relied upon had it been pleaded. In Cleveland etc. R. Co. v. Halbert, 179 Ill. 196, it was held that the statute of that State did not apply to crossings other than those at grade. What the wording of the statute was is not stated, but the court remarks that the rulings of the various courts are based upon the peculiar phraseology of the statutes, so that its decision must have been based on the peculiar phraseology of the Illinois statute. The court, however, ruled that a common law duty rested upon the railroad to give warning of its approach to such a crossing *if the peculiar circumstances surrounding that crossing were such as to make the company lacking in ordinary care in failing to warn.*

In Missouri etc. R. Co. v. Thomas, 87 Texas 282, the court held that the statute referred to grade crossings only. But the court held that, *independent of statute*, the law imposes upon a railway the duty of exercising reasonable care and diligence to avoid injury to others and that a failure to do so is negligence, and that whether the failure to give notice of a train's approach to an overhead crossing is negligence, must, in the absence of a statute, be left to the jury.

In Baron v. Chicago etc. R. Co., 89 Wis. 83, 61 N. W. 302, the court held that the statutory signals required at crossings applied only to grade crossings. But in that case the jury found that the bell was rung and that plaintiff could have heard it had she been exercising care.

In Ryan v. Pennsylvania R. Co., 132 Pa. St. 304, 19 Atl. 81, the ruling was merely that a railroad is not liable for frightening horses at an overhead bridge when operated *in a lawful manner*. The case does not seem to have been predicated upon a failure to give

signals, and, if any were required, they must have been given, since the train was operated in a lawful manner and without negligence.

In Skinner v. New York etc. R. Co., 64 N. Y. Supp. 325, it was held that a railroad is not liable for failure to give warning of its train's approach to an overhead crossing unless it has observed that plaintiff is in a dangerous position. This was decided under a different statute than the one in force when People v. New York Central R. Co., 13 N. Y. 78 was decided, because at page 326 the court says: "Under the earlier statutes and decisions of this State, it must be conceded that the statute was sufficiently broad in its language to apply to all crossings at a public highway where the railroad intersects the highway at a grade, or passes over or under such crossings."

From the foregoing review of authorities we think it will appear that the question of whether a railroad is liable for failure to give notice of approach to a crossing not on grade is made to depend, in some jurisdictions, on whether there is a statute broad enough to apply to such crossings, and, in other jurisdictions, regardless of any statute, on whether the circumstances are such as to require notice in the exercise of ordinary care. It would seem to follow, therefore, that in a case like the present, where there is an ordinance requiring the bell to be rung, we would not be justified in saying, as a matter of law, that there can be no causal connection between a failure to ring the bell and the injury, or that the ordinance can have no application to crossings not on grade. And it is only upon this point that the foregoing authorities are reviewed. *We are not to be understood as impliedly holding that our State statute, section 3140, Revised Statutes 1909, applies to crossings not on grade.* That question is not before us in this case. All that we are saying is that where there is as here, a duty imposed by law on the railroad to give a

*constant* signal of the movement of its trains—which applies to an approach to a crossing of any kind—and there is evidence from which reasonable men could infer that failure to perform that duty resulted in injury to one using such crossing, then it is beyond the power of the court to declare, as matter of law, that there is no liability for failure to perform that duty. As hereinbefore shown, there was such evidence, and the nature and character of the crossing together with the question of whether such failure was or was not the proximate cause, or one of the proximate causes of the injury, were submitted to the jury by instructions on both sides.

It is said that the petition is not framed on the theory that the failure to ring the bell was one of the causes of the injury, in that there is no allegation therein that the place where said horse was frightened was a perilous position or that plaintiff was led, by the failure to ring the bell, to put herself in such perilous position. The petition, however, alleged the facts showing the situation and all its surroundings and what plaintiff did, from all which the above facts appear as a necessary inference. Besides, there was no attack made on the petition except by an objection to the introduction of any evidence thereunder. There was no objection to the admission of the evidence of the failure to ring the bell on the ground that it constituted no basis for a cause of action. There was an objection to the ordinance but only on the ground that it was unreasonable and void and not properly proved, which were untenable. Nor is the contention sound that the plaintiff's cause of action is based solely on the theory that the blowing of the whistle alone caused the injury. If the failure to obey the ordinance requiring the bell to be rung led plaintiff into a dangerous situation whereby her otherwise gentle horse became frightened, and she was thereby hurt then the failure to ring the bell was proximately the cause, or one of

the causes, of the injury; and if, while in such danger-
ous situation, the whistle was blown in violation of the
other ordinance, which also caused, or joined in caus-
ing or adding to, the horse's fright, then it was also ·
one of the causes of the injury. And the fact that both
may have combined to produce the injury does not pre-
vent plaintiff from submitting each as a cause of ac-
tion, if each of them alone constitutes a cause. There
is no necessary repugnance between the two, that is,
proof of the one does not disprove the other. Under
the cause of action based on the failure to ring the
bell, the petition does not allege that the horse became
frightened at the usual noises made in the *proper and
lawful.* operation of the train, but that the operation
of the train was *unlawful* and that by reason thereof
her horse was in a place where it was caused to be-
come frightened and that while in such place defend-
ants unlawfully used the whistle which also frightened
her horse. There was, therefore, no necessary incon-
sistency in the two charges of negligence. And if each
constitutes a cause of action for which defendants are
liable, then plaintiff is not required to show specifically
which one did cause the injury. The case is not like
one where the evidence shows the injury to be the re-
sult of one of two causes, for one of which, and not
the other, the defendant is liable. In such case, the
plaintiff must show with reasonable certainty that the
one for which defendant is liable caused the injury.

With reference to the charge that defendants vio-
lated the ordinance by blowing the whistle "when said
train reached the bridge," it is a well-established rule
of law that a railroad is liable for the negligent fright-
ening of a traveler's horse by making unnecessary
use of the whistle or creating other unnecessary noises.
So that, as the ordinance forbade the use of the whis-
tle "except in cases of immediate danger," the use
thereof when there were no circumstances calling or
reasonably appearing to call for it to avoid immediate

danger, was negligence for which defendant would be liable if it caused or joined in causing plaintiff's injury. [Georgia etc. R. Co. v. Carr, 73 Ga. 557; Rogers v. Baltimore etc. R. Co., 150 Ind. 397; Mitchell v. Railroad, 100 Tenn. 329; Cincinnati etc. R. Co. v. Gaines, 104 Ind. 526; Pennsylvania R. Co. v. Barnett, 59 Pa. St. 259; Brown v. Missouri Pac. Ry., 89 Mo. App. 192; Pontius v. Chicago etc. R. Co., 174 Mo. App. 576.]

Plaintiff's evidence tended to show that as the train rolled onto the bridge the engine emitted a very loud, shrill and unusual whistle; that the whistling was repeated several times; that the whistling continued as the train went down the track and until. after the occupants of the buggy had been thrown out and that the whistling kept up until the train was out of sight. The contention of the defendants was that the whistling was done because there were children on or near to the track west of the bridge and the whistling was necessary to warn them of danger. The occupants of the buggy, plaintiff and a young lady school teacher, say they could see along the track west of the bridge and also the ground and paths leading to the railroad south and southeast of the railroad and that no children were there. The children said to be on the track were those living in a house a short distance south of the railroad. Plaintiff's evidence was to the effect that they were looking and listening for a train until just the moment they started under the bridge; that they could see the track west of the bridge and the ground south of that part of the track clear to the house where the children lived and that no person was in sight to cause or to require the whistle to be blown. The engineer testified in the case, but he did not say he saw any children or that he whistled on account of any. On the contrary, he remembered nothing unusual happening that morning. He testified that it was his custom to whistle just west of the bridge.

a little; that at the top of the hill two and one-half miles east it was customary to shut off steam and glide down grade there usually about thirty-five miles per hour. He also testified that it was not his custom to ring the bell except at the crossings, also that there was much travel on the highway in question. The fireman also testified, but he too said nothing about children on the right of way.

Defendants' witnesses who say there were children near the track west of the bridge were persons living south of the track, and they also testified that it was customary for the train to whistle just before they crossed the bridge, at least such was the custom before the accident. One of the two children, said to have been on the right of way, said she did not remember whether the train whistled the morning of the accident or not but that it whistled pretty near every morning. Under all these circumstances the question of whether there was a situation calling for the use of the whistle within the exception provided for by the ordinance was for the jury to determine. And we cannot say there was no evidence to support plaintiff's contention that the whistle was blown in violation of the ordinance.

The foregoing answers a number of defendants' objections to plaintiff's instructions. In addition to these objections, defendants object to plaintiff's instruction number 2 because they say it does not require the jury to find that the failure to ring the bell led plaintiff from a safe to a perilous position nor to find that the place she was in was perilous. But the instruction is not open to these objections. Among the many facts the jury was required to find, the instruction said "if you further find that said undercrossing was dangerous by reason of the fact, if it was a fact, that travelers on said undercrossing could not see approaching trains in time to avoid putting them-

185MoApp37

selves in a perilous position, etc.'' Then, after requiring them to find that it was in the city limits and that there was in effect an ordinance requiring the bell to be rung continuously, and if they found that no signal, either by bell or otherwise was given on approaching said crossing, the instruction said, "and if you believe that by reason of such failure to give warning of the approach of defendant company's train to said undercrossing, plaintiff was led to put herself in a perilous position with reference to said overhead bridge, and that as a direct result thereof the horse which she was driving was frightened and caused to run away and injure plaintiff ,then your verdict should be for plaintiff." So that, the instruction did submit to the jury the two questions said to have been omitted or assumed as facts.

It was not error to refuse defendants instruction "B" for the reason that it ignores altogether plaintiff's right to be informed of the train's approach so that she could take precautions for her own safety. The danger to which plaintiff was exposed by reason of no signal bell having been rung was not only the danger of her horse being frightened while under the bridge but also the danger of that fright taking plaintiff unawares and under circumstances which gave her no opportunity to prepare for or avoid the injurious consequences of that fright. Under the ordinance requiring the bell to be rung, plaintiff had a right to have notice that the train was coming so that she would not only avoid being nearly under the bridge but would also be enabled to otherwise take due precautions for her safety, such as getting out of the buggy, etc. Instruction "B" ignores this right entirely.

Instruction "C" was also properly refused because of this same fault. It overlooks the fact that the wrong done to plaintiff by reason of defendants failure to ring the bell, was not only the danger of

her horse being frightened, but also of being unlaw-
fully denied the right to know of the danger and to
adopt means to protect herself. The instruction as-
sumes that there was but the one danger, that of the
horse becoming frightened, but there was also another
danger, that of the fright occurring suddenly when
plaintiff was off her guard and with no opportunity
of escape. Besides, the two situations, that of being
back from the bridge on the highway and expecting
the train to pass, and that of being under, or prac-
tically under, the bridge with the chances of fright
greatly increased and the plaintiff unaware of and
unable to avoid danger, is so greatly different in their
real nature and character as to make the instruction
totally inapplicable to the facts, and therefore mis-
leading.

Instruction "D," which was refused by the court,
was properly refused, since it told the jury they could
not consider the excessive speed of the train for any
purpose. It could be considered in passing on the
question whether plaintiff was right in saying that
as she looked along the track from the crest of the
hill there was no train in sight. The case was not
submitted to the jury on the excessive speed of the
train but that did not prevent excessive speed from
being an incidental matter of evidence to be consid-
ered along with the question of plaintiff's care in go-
ing under the bridge at the time she did. Defendants
would have been entitled to an instruction that the
plaintiff could not recover on account of the speed
of the train, but that instruction was not asked.

. But defendants say the speed of the train was
argued to the jury as one of the proximate causes
of the injury. There is nothing in the bill of excep-
tions to show that such an argument was made, nor,
if made, that any objection thereto was offered and
exception saved. An affidavit attached to the motion
for new trial stating that such an argument was made

is no proof thereof. [Dougherty v. Whitehead, 31 Mo. 255; State v. Schunn, 164 S. W. 202.]

Although defendants' answer, after stating a general denial, contained an averment that "if plaintiff was injured, as stated in said petition, her injuries were caused solely by her own carelessness and negligence and by risks and dangers voluntarily assumed by her, and not on account of any careleessness or negligence on the part of these defendants" yet this was not a plea of contributory negligence but merely a denial of plaintiff's cause of action. [Ramp v. Metropolitan St. Ry. Co., 133 Mo. App. 700; Benjamin v. Metropolitan St. Ry. Co., 245 Mo. 598, l. c. 614.] The case, however, was tried and submitted by both sides on the theory that contributory negligence was an issue in the case, and we will treat it as if that issue had been properly pleaded. Defendants given instruction number 5 submitted the question whether plaintiff knew before going under the bridge that the train was approaching and tried to pass under the overhead crossing before the train reached it, and told the jury that if such was the case she could not recover. Defendants' given instruction number 7 also told the jury it was plaintiff's duty to look and listen for an approaching train before going under the crossing and that if the jury believed that if she had so looked and listened she could have seen or heard the train in time to have avoided going under, then they should find for defendants. So that the question of contributory negligence, in so far as it was contained in the acts specified in the two foregoing instructions was submitted to the jury. The defendants, however, complain of the refusal of instruction "G" which was merely an abstract instruction on contributory negligence telling the jury that if plaintiff was guilty of any negligence which directly contributed in any degree whatever to her injury, then they should find for defendants. The trouble with this

instruction is that it did not point out in any way what acts would constitute contributory negligence but left the jury to determine that question of law for themselves. Under that instruction the jury might have said it was contributory negligence for any girl thirteen years of age—as plaintiff was—to drive a horse along any highway which ran under any railroad bridge although her school teacher was with her.

After the trial had commenced and a few questions had been asked of plaintiff's first witness, it was discovered that one of the juror's hearing was so defective that he could not hear the testimony. Thereupon the court discharged the juror and offered to *either call another panel* or another juror. The defendants would not avail themselves of the choice afforded them by the court, whereupon the court called another juror, and he was duly examined by both sides upon his *voir dire* as to his qualifications. At the conclusion of this examination the court inquired of counsel if the juror was satisfactory. To which counsel for defendant replied, ''Yes, sir—while we accept him as a juror we except to the action of the court.'' They had previously objected to the former juror being excused and also to the action of the court in calling another juror instead of continuing the case. Thereupon the jury, with the new juror therein, was sworn and the trial began anew as if it had never been commenced before. It is now claimed that the court's action in calling another juror was error in that it deprived defendant of its challenges. But the court having offered to call a new panel, and that offer not having been accepted, and the new juror having been accepted.as satisfactory, we cannot see how defendants' rights were prejudiced.

After a careful examination of the entire case we feel that we are without warrant to disturb the verdict. The judgment is, therefore, affirmed. All concur.